**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| NICOLE HINSON, Individually and as | ) | |
| Next Friend of C.H., a Minor; and | ) | |
| CAMERON HINSON, Texas residents, | ) | |
| | ) | |
| Plaintiffs | ) | Case No. 2:15-cv-00713-JRG-RSP |
| | ) | |
| v. | ) | |
| | ) | |
| DOREL JUVENILE GROUP, INC., a | ) | |
| Massachusetts corporation, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S MOTION TO EXAMINE MINOR PLAINITFF C.H.

TO THE HONORABLE MAGISTRATE JUDGE ROY S. PAYNE:

COMES NOW Defendant Dorel Juvenile Group, Inc. ("DJG") and requests the Court to order Plaintiffs to permit minor Plaintiff C.H. to submit to a reasonable physical examination, as permitted by Fed. R. Civ. P. 35.

## I.
## Introduction

Plaintiffs' lawsuit seeks to recover significant damages from DJG for C.H.'s medical injuries sustained in the subject accident. (Complaint at 4). Plaintiffs recently designated 5 damages experts contending C.H.'s future medical expenses and loss of earning capacity will exceed $10 Million. The Plaintiffs have submitted C.H. to multiple examinations by Plaintiffs' experts. Plaintiffs have also conducted extensive interviews with these experts in order to provide them information regarding C.H.'s injuries and care. However, despite repeated attempts conferring on the matter, Plaintiffs' counsel

refuses to allow DJG's life care planner to conduct a single interview with C.H.'s caregivers and a brief examination of C.H.  Plaintiffs' counsel appears agreeable to the concept of such an interview/examination, but has placed unreasonable restrictions on Defendant's expert which were not placed on Plaintiffs' own retained experts.

## II.

## Good Cause Exists for C.H.'s Examination

A physical or mental examination can be ordered when (1) the physical or mental condition of the proposed examinee is in controversy and (2) good cause is shown for the examination.  Fed. R. Civ. P. 35(a); *Ornelas v. Southern Tire Mart, LLC,* 292. F.R.D. 388, 391 (S.D. Texas 2013); *Schlagenhauf v. Holder,* 379 U.S. 104, 118-19 (1964).

C.H.'s physical and mental condition is obviously in controversy. Good cause also exists.  Plaintiffs have designated the following experts with their opinions summarized in brief:[1]

1. Dr. Amy J. Mackenzie – life care planner who estimates C.H.'s future medical care costs between $10 Million and $15 Million.

2. Dr. David J. Altman – neurologist opining on C.H.'s spinal injuries and future care.

3. Dr. Arthur Joyce – neuropsychologist who diagnosed C.H. with a traumatic brain injury.[2]

4. Dr. Rodney N. Isom – vocational rehab expert who opines C.H. will suffer loss of earning capacity in the amount of $42,040.00 per year for life.

---

[1] The actual reports of these experts are not being attached due to their length and the obvious confidential nature of C.H.'s medical treatment.  However, should the court request the reports and/or Plaintiffs refute DJG's characterization of them, they will be provided under seal.

[2] This appears to be the first time any medical provider has diagnosed this condition as discussed further below in Section IV.

5. Dr. Ralph D. Scott – economist who calculates the present value of C.H.'s medical and loss of earning damages to be in excess of $10 Million.

Based on their own reports, these experts have conducted at least 8 examinations of C.H. and interviews of Nicole Hinson and Deborah Williams.[3]   Further, Dr. Altman and Mackenzie attended 2 of C.H.'s doctor appointments.   Defendant seeks one brief interview with Nicole Hinson (and C.H.'s grandmother if she wishes to attend) and an examination of C.H. in order to assess C.H.'s care, injuries, and the extent of Plaintiffs' significant damages claims.

## III.

## Plaintiffs Seek Unreasonable Restrictions on the Examination

During many conversations and correspondence on this issue, Plaintiffs' counsel seems to have agreed to an examination in principle.  However, Plaintiffs' counsel has sought unreasonable restrictions on the examination.  Such restrictions are patently unfair in light of the unfettered access given Plaintiffs' experts.

Specifically, when Defense counsel first requested the examination, counsel for Plaintiffs requested a "protocol" for the exam/interview.  In an attempt to cooperate on this issue, the undersigned provided copies of questionnaires that its expert typically uses in such cases.  *See* Exhibit "A" at 17 (conferral emails).  Then, Plaintiffs' counsel requested copies of any notes or records from the examinations, even if the examiner was not designated as a testifying expert.   DJG agreed.  *Id. at* 15-16.  After some delay, Plaintiffs'

---

[3] An expert's visit to the Hinson home or an office visit is counted as 1, although it may have included interviews of Nicole Hinson, Deborah Williams, and/or an exam of C.H.

counsel seemed satisfied and the parties began working on the arrangements.  However, when told that the examination/interview with DJG's expert, Dr. Walter Harrell would take approximately 2 hours, Plaintiffs' counsel balked.  Apparently, he believed that the Defense expert would merely perform a "drive-by" meeting that would take far less time. Repeated efforts were made to allay any concerns of Plaintiffs' counsel.  However, Plaintiffs' counsel claimed 2 hours was two long pointing to issues in the questionnaires that could have been asked in the deposition of the Plaintiffs or that could be addressed in the medical records.  *Id. at* 14-15.  His final response, was to "cut and paste" questions from one of the experts' questionnaire forms that (1) would be answered by interrogatory vs. an interview, (2) could not be asked, and (3) could be asked.  *See id. at* 1-13.[4]

Such an arrangement is obviously unworkable and fraught with difficulty.  This procedure would wed the expert to a non-case specific form, preclude asking questions he feels are relevant and impede the expert's ability to follow up on answers given by Ms. Hinson or C.H.  This arrangement would also run the risk of further disputes in the event Plaintiffs alleged the expert went outside the bounds of the "pre-approved questions."

Courts have routinely rejected unreasonable limitations on Rule 35 examinations. *See Ornelas,* 292 F.R.D. at 395-97 (rejecting Plaintiff's request to have counsel present and to videotape examination); *Calderon v. Reedier Claus-Peter Offen GimbH & Co,* 258 F.R.D 523, 527-29 (S.D. Fla. 2009) (same); Hertenstein v. Kimberly Home Health Care, Inc., 189

---

[4] Defense counsel received no response to the last phone call to confer on this issue with Plaintiffs' counsel.

F.R.D. 620, 634 (D. Han. 1999) (denying request for "familiar face" at examination).  In

fact, the Northern District of Texas rejected the very limitations Plaintiffs are arguing for

in this case.  See *Lahr v. Fulbright & Jaworski, LLP,* 164 F.R.D. 196, 200 (N.D. Texas. 1995)

(permitting 3-hour mental examination despite the availability of deposition testimony

and medical records), *affirmed,* 164 F.R.D. 204 (N.D. Tex. 1996).  The court should likewise

reject Plaintiffs unreasonable restrictions here.

## IV.

## Why Would Plaintiffs Oppose a Reasonable Examination of C.H.?

The undersigned has never faced such opposition to an IME/Interview in a

catastrophic injury case.  Typically, a Plaintiffs' counsel agrees to such examinations to

prove to Defendants the seriousness of their clients' injuries.  Something is different

here.

After receiving Plaintiffs' expert designations and recently deposing Drs. Joyce

and Mackenzie, Defense counsel believe they have an answer.  In their "original" expert

designations in the Hinson v. Wal-Mart[5] case, which arose out of the same underlying

accident, Plaintiffs did not designate Dr. Joyce.  They did not claim anywhere that C.H.

had a Traumatic Brain Injury (TBI).  Not a single one of the scores of doctors seen by

C.H. since the May 15, 2013 accident had diagnosed him with a TBI.  On February 4,

2016, Dr. Joyce issued his report which for the first time claimed C.H. had a TBI.  He

further claimed this injury would prevent C.H. from ever living independently or

[5] Civil Action No. 2:14-CV-294-JRG-RSP.

obtaining competitive employment. These opinions were relied on by Dr. Mackenzie (formerly named Dr. Johnson at the time of her work on the <u>Wal-Mart</u> case) to add new damages to her life care plan between approximately six to ten million dollars in future living care and expenses for an alleged mentally incompetent C.H.[6]

Dr. Joyce is a neuropsychologist. Coincidentally, so is Dr. Harrell. It appears Plaintiffs' counsel is concerned about having another expert neuropsychologist spend too much time in the presence of C.H. Perhaps even such a short time period with C.H. would give Dr. Harrell time to determine whether in fact C.H. has a TBI or not. Regardless of the motivation, Plaintiffs' restrictions are unreasonable in light off the medical and psychological damages claimed in this case, and are intended to restrict Defendant's ability to defend.

## V.

## <u>DJG Will Comply with all Rule 35 Requirements</u>

DJG will comply with all the requirements of Rule 35 and any additional requirements placed by the court. Specifically, DJG identifies the examiner, Dr. Walter Harrell, Ph.D., ABPP, a board certified life care planner and neuropsychologist/rehabilitation expert. Dr. Harrell may also be accompanied by an expert in spinal cord injuries, Dr. Juan M. Latorre. Copies of C.V.s of Dr. Harrell and Dr. Latorre are attached as Exhibit "B". Defendant agrees to conduct the examination at Plaintiffs' convenience at the home where C.H. lives in Longview, Texas. The scope of

---

[6] Mackenzie's spinal cord related damages *only* total $3.7M to $5.2M.

the examination will be an interview largely following the two questionnaires attached in Exhibit "A" at 2 and 17, with reasonable follow-up questioning on pertinent answers as would be expected from a practitioner in these fields.  In order to address Plaintiffs' counsel's concerns regarding duplicative questions, the examiner will strive to avoid questions which were asked in the depositions or which can be readily answered in the medical records.  A brief examination of C.H. will also occur.   A copy of the examiner's report will be provided to Plaintiffs' counsel.

## VI.

### Defendants' Expert(s) Should Be Given the Opportunity to Supplement Their Opinions After the Examination

Defendant's deadline to designate experts is March 11, 2016.[7]  It appears unlikely this motion will be resolved by that date, and DJG expects to timely designate by the deadline.  However, DJG requests that in the event the Court grants this motion, Defendant's damages experts be granted leave to file a supplemental designation twenty-one (21) days following the date of the examination.  This will allow the Court and the Jury to have the benefit of the complete expert opinions of DJG's damages experts.

Finally, although not requesting any extra relief at this time, DJG wants to advise the Court and Plaintiffs that it is possible that additional examination and/or discovery may be needed on this issue, after the Rule 35 Examination.  Dr. Harrell advised that he cannot rule out the need for Neuropsycholgical tests such as those conducted by Dr.

---

[7] The parties agreed to mutual extensions of the expert deadlines in the Court's Amended Docket Control Order for scheduling reasons.

Joyce, without first examining C.H. and reviewing Dr. Joyce's "new" TBI opinions and the underlying data in his file (Dr. Joyce's deposition was just taken February 24, 2016). Further, Counsel cannot predict what areas of inquiry may be revealed by the Rule 35 Examination.  However, at this time DJG is merely seeking the examination it initially sought before seeing Plaintiffs' new damage theory.

## IV.

## <u>CONCLUSION</u>

Good cause exists for the Court to compel a reasonable examination of C.H. and interview of Plaintiff Nicole Hinson. Therefore, DJG requests the Court grant this motion and enter the proposed order submitted with the motion.

Dated:  February 26, 2016              DOREL JUVENILE GROUP, INC.


/s/ Anthony A. Avey_____
Jonathan Judge (pro hac vice)
SCHIFF HARDIN LLP
233 S. Wacker Drive, Suite 6600
Chicago, IL 60606
Telephone: (312) 258-5500
Facsimile: (312) 258-5600
jjudge@schiffhardin.com

Anthony A. Avey
AVEY & ASSOCIATES PLLC
14255 Blanco Rd.
San Antonio, TX   78216
(210) 308-6600
(210) 308-6939 – facsimile
tavey@aveylaw.com

Attorneys for Defendant Dorel Juvenile Group, Inc.


     I hereby certify that I have conferred with Plaintiffs' counsel regarding the relief requested in this motion and they oppose the relief requested in said Motion.

By:___/s/ Anthony A. Avey_____
           Anthony A. Avey

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on 26th day of February, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF and a copy of the foregoing document was forwarded to all counsel of record.


_____ /s/   *Anthony A. Avey* _____
Anthony A. Avey