UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| NICOLE HINSON, Individually and as Next Friend of C.H., a Minor; and CAMERON HINSON, Texas residents,<br><br>        Plaintiffs<br><br>    v.<br><br>DOREL JUVENILE GROUP, INC., a Massachusetts corporation,<br><br>        Defendant. | Case No. 2:15-cv-00713 |

**DEFENDANT DOREL JUVENILE GROUP, INC.'S
RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL[1]**

On May 15, 2013, C.H. was in an incredibly severe accident: both sides agree it had a delta-V, or change in velocity, of about 35 miles per hour or more. That delta-V is more severe than 99% of all accidents that occur each year in this country. During the accident, C.H. suffered a bizarre spinal cord injury to his lower thoracic spine.

C.H. was restrained in a 5-point, forward-facing harness seat at the time of the crash. His seat, the Summit Deluxe, model number BC057-NOR, was manufactured in Indiana during the year 2012 by the defendant, Dorel Juvenile Group, Inc. ("DJG"). Two pictures of the Summit follow:

---

[1] Plaintiffs' motion to compel anticipated DJG's plan to file a motion for protective order on many of these issues. To avoid duplication, Defendant has simply responded to Plaintiffs' motion. As described herein, DJG clearly seeks protection from Plaintiffs' oppressive and overbroad demands. *See* Fed. R. Civ. P. 26(c)

 

Because the Summit is a 5-point harness, when properly used, its straps go over the shoulders of the child and hold the child in place. In fact, to date no expert has reported finding *any* similar injury involving a five-point harness.

Given the highly-unusual nature of C.H.'s spinal cord injury, it is no surprise that the Summit, despite millions of seats sold, has never seen this injury either. The Summit has never been recalled, and has been tested hundreds of times to establish its safety in frontal accidents similar to this one. There is no dispute that the Summit meets and exceeds the performance requirements of Federal Motor Vehicle Safety Standard 213 ("FMVSS 213").

Plaintiffs do not contend in their Motion that DJG has withheld design, testing, incident, or other documents relating to the Summit platform. Indeed, DJG has produced tens of thousands of pages of documents concerning all U.S. models of the

Summit, including e-discovery. In the spirit of cooperation, DJG also produced material regarding the issue of children being rear-facing, as demanded. Defendant even agreed to produce post-manufacture product information about two completely different child restraints that were designed and sold with Plaintiffs' preferred labeling years after Plaintiffs' Summit was manufactured for sale.

But nothing will ever satisfy Plaintiffs' counsel. Frustrated by the Summit's impeccable safety record, Plaintiffs are now demanding incident history documentation for every single forward-facing car seat Defendant has ever made, a request that spans over a hundred models and which no court has ever even remotely entertained. Plaintiffs also demand a broad range of design documentation related to numerous other seat platforms, despite having already received examples of (inadmissible) information about post-manufacture changes to other child restraints (not the Summit).

Plaintiffs have everything they need to present their case, such as it is. Their latest demands are unreasonable, the information has no demonstrable relevance, and the task of searching for and collecting it would impose intolerable burdens. The motion to compel should be rejected.

## ARGUMENT

Plaintiffs' motion to compel sets out six sprawling demands: (1) DJG must produce documents related to every claim of every injury to any child under three that allegedly occurred in every forward-facing seat it has sold, (2) DJG must produce documents related to other platforms and models, supposedly to show it is "feasible" to warn that a particular child should not use a particular seat, (3) DJG must produce e-

3

mails regarding the issue of whether and when a child should ride in a forward-facing seat (which it has already done), (4) DJG must identify employees with knowledge of the issues in this case (which it has already done), (5) DJG must produce information about its net worth, and (6) DJG must produce a "privilege log" of relevance and confidentiality redactions. DJG complied with Plaintiffs' demands as to (3) and (4), and their remaining requests are improper. The Motion to Compel should be denied in its entirety.

### A. DJG Has Already Produced Correspondence About The Core Issue Here And Identified Key Employees With Knowledge.

First, Plaintiffs' request for correspondence about the forward-facing issue and for identification of individuals with knowledge of the design and manufacture of the Summit seat should be denied as moot. Even before Plaintiffs filed their motion to compel, DJG made multiple productions totaling roughly 26,000 pages of documents. These productions included,

- design drawings,
- meeting minutes,
- engineering changes,
- model authorizations,
- quality files,
- materials information,
- a hazard analysis,
- sales reports, and
- testing reports and videos for the subject seat platform through the date of manufacture of the subject seat.

Additionally, DJG searched multiple employee email accounts for and produced correspondence regarding rear-facing and SCIWORA through the date of manufacture

4

of the subject seat, and did not limit its production on that particular issue to the subject seat platform.

After conferring with Plaintiffs' counsel once again, DJG agreed to produce even more material. DJG kept its word, and produced additional documents throughout late February. In those supplemental productions, DJG gave Plaintiffs a wide variety of material, including:

- updated testing reports and videos of the Summit platform,
- updated engineering changes for the Summit platform,
- the labels and instructions for the BC057-NOR that were used on the seat model after the subject seat was manufactured,
- various documents related to DJG's Scenera Next and Apt 40RF seat platforms, including marketing materials, and e-mails,
- material regarding the Kidz in Motion conferences,
- documents submitted by DJG to NHTSA regarding FMVSS 213, and
- an insurance policy.

DJG also supplemented its initial disclosures on February 26, 2016, identifying numerous individuals with knowledge of both the Summit platform's design and issues relating to whether and when a child should ride forward-facing as a general matter. (*See* Second Amended Disclosures, Ex. A hereto, at pp. 3, 6-7.)   DJG should not be ordered to do what it has already done.

      **B.**      **Plaintiffs Are Not Entitled To Documents Concerning Other Seats.**

Beyond the tens of thousands of pages of documents DJG already produced, Plaintiffs seek a tremendous amount of information about other seats, including injury reports that have nothing to do with the facts of this case and design documents related to seats Plaintiffs never used and never were even available for them to use. The Court should not entertain Plaintiffs' request to conduct a quintessential fishing expedition,

5

which no doubt stems from Plaintiffs' frustration over the Summit's remarkably clean safety history. Indeed, as noted above, there is no evidence any injury like C.H.'s has occurred before in the Summit – or any other forward-facing car seat like the Summit, for that matter. Furthermore, as explained above, DJG produced correspondence it was able to locate principally and materially responsive to the general forward-facing / rear-facing / SCIWORA issue at the core of Plaintiffs' case. DJG also produced general design documents related to any seat model within the Summit platform that was substantially similar to the one Plaintiffs actually used, which amounts to thirty (30) seat model numbers. DJG even produced post-manufacture documents about two different platforms for comparison purposes, even though Federal Rule of Evidence 407 will certainly keep that material out of evidence at trial.

Plaintiffs have rewarded DJG's cooperation with this Motion. Their continued demands for more information and documents regarding every other possible injury in every other forward-facing seat, along with various categories of documents concerning the design of other forward-facing seats Plaintiffs did not use, are grossly overbroad, unduly burdensome, and a continued effort to employ the burdens of discovery as a weapon, not a means to prepare for trial.

1. **Plaintiffs' Demands Are Overbroad.**

This diversity case applies Texas substantive law, and Texas product liability law therefore determines what is relevant and what is not. The Texas Supreme Court has specifically recognized that only information about products substantially similar to those used by the plaintiff is relevant in a product liability action. *In re Graco Children's*

*Products*, 210 S.W.3d 598, 599 (Tex. 2006) ("We have granted mandamus in several product-liability cases when a discovery order covered products the plaintiff never used."); *In re Alford Chevrolet-Geo*, 997 S.W.2d 173, 180 n.1 (Tex. 1999) ("We have identified as overbroad requests encompassing time periods, products, or activities beyond those at issue in the case — in other words, matters of questionable relevancy to the case at hand."); *see also In re Merck & Co*, 150 S.W.3d 747, 750 (Tex. Ct. App. — San Antonio [4th Dist.] 2004) (vacating order compelling production of documents related to product plaintiff never used); *In re Sears, Roebuck and Co.*, 123 S.W.3d 573, 579-80 (Tex. Ct. App. — Houston [14th Dist.] 2003) (same); *see also Murphy v. Cooper Tire & Rubber Co.*, No. 5:08cv40/RS/EMT, 2008 WL 5273548, at *6 (N.D. Fla. Dec. 18, 2008) (limiting scope of discovery to material relating to tires manufactured from same specification, at same plant, and within one year of subject tire); *Diaz v. Goodyear Tire & Rubber Co.*, No. CIV.A. 07-353-B-M2, 2009 WL 1298219, at *3 (M.D. La. May 8, 2009) (denying motion to compel production of information and documents relating to product that plaintiffs failed to establish was substantially similar to subject product).

Plaintiffs cite no case holding that all seats that may be used forward facing are substantially similar, nor could they.[2] In fact, they do not even suggest that they can make a showing of substantial similarity regarding any other DJG seat in this case.

---

[2] Plaintiffs cite at length *Jampole v. Touchy*, 673 S.W.2d 569 (Tex. 1984), but that case is easily distinguishable. *Jampole* concerned the discovery of information about the fuel tanks on other vehicles, which was relevant to the technological feasibility of incorporating alternative fuel tank designs on the subject vehicle. 673 S.W.2d at 573. Despite Plaintiffs' repeated suggestions to the contrary, there is no dispute that it was feasible for DJG to change the Summit's labels and instructions at any time.

Instead, Plaintiffs flatly claim — without any authority or expert support — that the ability to sit forward-facing is the "critical component" of such seats, and therefore all that matters. (*See* Motion at 6.) The federal government disagrees with that self-serving reduction of child restraint design down to a single element, and for good reason.

DJG manufactures several different "platforms" of car seat, and the Summit — used by Plaintiffs — represents only one such platform. Each platform has a unique shell shape encompassing several model numbers of substantially similar seats, and the Summit platform encompasses approximately thirty different model numbers, including Plaintiffs'. Even though two different platforms may both be used forward-facing, each platform performs differently and thus must be separately certified for compliance with FMVSS 213. (*See* Declaration of Christine Eineman-Christian, Ex. B at ¶ 4.) Put differently, the performance of any particular design of seat is not necessarily probative of the performance of some other design of seat. Indeed, the National Highway Traffic Safety Administration requires that each car seat design be tested separately and individually. (*See id.*; *see also* Child Safety Seat Test Data (Dynamic Tests) – January 2010 Edition, attached as Ex. C.) A Hummer and a Focus are both motor vehicles and share some characteristics, but they obviously are not substantially similar. The same is true of forward-facing child seats.

Moreover, Plaintiffs' experts do not even argue there to be any design or manufacturing defect in the Summit; their sole claim is that the Summit was defectively marketed and labeled for use at the time it was made in 2012. They nevertheless seek substantial discovery about incidents and product developments that occurred after

2012. Under Texas law, the sole relevant fact to a product defect claim is what DJG knew or should have known on the date it made C.H.'s seat, which was in 2012.[3] *See Nissan Motor Co. Ltd. v. Armstrong*, 145 S.W.3d 131, 139 (Tex. 2004) ("Whether a product was defective must be judged against the technological context existing at the time of its manufacture."); *see also Syrie v. Knoll Intern.*, 748 F.2d 304 (5th Cir. 1984) (no post-sale duty to warn under Texas law). Evidence of any changes subsequently made to the product after manufacture is inadmissible at trial. FED. R. EVID. 407. There is no exception to that rule which would apply here. Again, Plaintiffs' attempt to frame the issue as one of "feasibility" is a transparent red herring. There is no dispute it is and was possible to mark or change the age and weight range on the Summit at any time it was offered for sale. The parties simply disagree on whether such a change was warranted based on the information available at the time Plaintiffs' seat was made. "Feasibility" provides no basis to order the production of material regarding other supposed "alternative designs."

### 2. Plaintiffs' Demands Are Unduly Burdensome.

Plaintiffs also claim their requests for other incident and other product material are "very narrowly tailored" and "limited." (*See* Motion at 7, 9.) These unsupported, conclusory assertions are wrong. As further set forth in Ms. Eineman-Christian's

---

[3] Furthermore, under Texas law, claims for punitive damages can only arise from conduct that results in a compensatory damage award. *See Green v. Schutt Sports Mfg. Co.*, 369 Fed. Appx. 630, 633 (5th Cir. 2010) (noting statutory prohibition on "an award of exemplary damages unless actual damages are also awarded"). Thus even if some claim for punitive damages were to be made, post-2012 conduct remains irrelevant.

Declaration, DJG is an American company, and it designed and manufactured the Summit in the United States. (Eineman-Christian Dec. at ¶ 3.) Although Plaintiffs' document requests and motion did not identify the precise extent of the additional material sought, they apparently demand information about over one hundred seat models, including seats sold in Canada and every other country in North America. (*See* Motion at 8.)

Complying with Plaintiffs' requests would be a gargantuan task and would cause a significant disruption to DJG's business with no corresponding benefit. It would likely take weeks of DJG's employees' time to locate, collect, and review all the information. (Eineman-Christian Dec., Ex. B at ¶ 9.) While doing so, those employees would not be able to perform their day-to-day responsibilities at the company. (*See id*.) And that does not include substantial attorney review time thereafter. This is precisely the sort of fishing expedition Texas courts have rejected. *See In re John Crane, Inc.*, No. 01-03-00698-CV, 2003 WL 22682613, *2-*4 (Tex. Ct. App. (Houston) Nov. 13, 2003) (sustaining overbreadth and undue burden objections related to discovery of material concerning uncontested matters and hundreds of additional products).

DJG has produced documents related to Plaintiffs' Summit and all substantially similar models that use the same shell and thus are part of the Summit platform. DJG has also produced documents generally concerning the forward-facing versus rear-facing issue at the core of Plaintiffs' claims. That is more than enough for Plaintiffs to prove their case, to the extent they have one. Plaintiffs' demands are facially overbroad and unreasonable, but DJG has gone further and substantiated both the irrelevance of

and the enormous burden that seeking the requested additional information would impose. DJG's objections to the production of documents regarding other seats should be sustained, and Plaintiffs' motion should be denied.

### C. Plaintiffs' Request For Net Worth Information Should Be Denied.

In addition to all the information Plaintiffs seek about irrelevant incidents and other products, Plaintiffs continue to demand documents "reflecting Dorel's net worth," which Plaintiffs characterize as "relevant and discoverable." (*See* Motion at 11.) It is not so simple. Under Texas law, information about net worth is relevant only where the pleadings "sufficiently allege that [the defendant] is liable for exemplary damages." *Al Parker Buick Co. v. Touchy*, 788 S.W.2d 129, 310-31 (Tex. Ct. App. (Houston) 1990) (granting writ and rejecting net worth discovery where complaint contained only a "conclusory request for punitive damages"). Plaintiffs' operative Complaint contains nothing but boilerplate regarding gross negligence and exemplary damages. (*See* Doc. No. 1 at pp. 3-4.) Accordingly, their request for net worth information should be denied. If Plaintiffs' claims of malice somehow survive summary judgment and secure a finding of punishable behavior by the jury in the first phase of the trial, the issue of DJG's net worth can be revisited at that time.

### D. Plaintiffs' Demand For Unreadacted Documents Or An Additional Privilege Log Should Be Denied.

Finally, Plaintiffs argue that DJG should be forced to produce complete copies of all documents redacted on grounds of relevance and confidentiality because DJG did

11

not provide a "privilege log" of those objections. (*See* Motion at 12.) Those materials, however, were redacted on grounds of relevance, not privilege.

Plaintiffs do not and cannot contest that redaction "is appropriate where the information redacted was not relevant to the case." *Spano v. Boeing Co.*, No. 3:06-cv-743-DRH-DGW, 2008 WL 1774460, at *2 (S.D. Ill. April 16, 2008) ("To their credit, the Defendants produced the documents containing irrelevant information with redacted portions instead of not producing the documents at all."); *see also In re Oil Spill Litig.*, MDL No. 2179, 2011 WL 12663484, at *1 (E.D. La. July 1, 2011) (holding redaction of irrelevant and confidential portions of meeting minutes proper). And Plaintiffs provide no authority whatsoever supporting their suggestion that DJG should be forced to produce all documents without redactions now simply because they were not included on a "privilege log." The meeting minutes in question were redacted because they included discussions of different products not at issue in the case. DJG should not be forced to go through the dubious exercise of trying to further describe the limited information it has redacted from its business records in sufficient detail to appease Plaintiffs while still preserving the integrity of those redactions. Indeed, recent history suggests that no matter how DJG described the redacted material, it would not be enough, and another motion to compel would likely follow.

## CONCLUSION

DJG has more than met its discovery obligations here, and it should not have to undertake the burden and cost of making an enormous production of irrelevant

additional documents regarding products Plaintiffs never used. DJG's objections should be sustained, and Plaintiffs' Motion to Compel should be denied.

To the extent the Court further agrees with DJG that Plaintiffs' motion is not substantially justified, DJG also asks for an award of its fees and costs in briefing this motion.

Respectfully submitted,

/s/ Matthew G. Schiltz
Anthony A. Avey (Attorney-in-Charge)
AVEY & ASSOCIATES, PLLC
Texas State Bar No. 00790250
14255 Blanco Road
San Antonio, Texas 78216
Telephone: (210) 308-6600
Facsimile: (210) 308-6939
tavey@aveylaw.com

Jonathan Judge (pro hac vice)
Matthew G. Schiltz (pro hac vice)
SCHIFF HARDIN LLP
233 S. Wacker Drive, Suite 6600
Chicago, Illinois 60606
Telephone: (312) 258-5500
Facsimile: (312) 258-5600
jjudge@schiffhardin.com
mschiltz@schiffhardin.com

**ATTORNEYS FOR DEFENDANT
DOREL JUVENILE GROUP, INC.**

**CERTIFICATE OF SERVICE**

I hereby certify that I caused the foregoing to be filed on March 14, 2016, with the Clerk of Court using the CM/ECF System, which will automatically send e-mail notification of such filing and a link to a copy of the document to all attorneys of record.

/s/ Matthew G. Schiltz
Matthew G. Schiltz