UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| NICOLE HINSON, Individually and as Next Friend of C.H., a Minor; and CAMERON HINSON, Texas residents, | § § § § | |
| Plaintiffs | § § | Cause No. 2:15-cv-713-JRG-RSP |
| v. | § § | Jury Demand |
| DOREL JUVENILE GROUP, INC., a Massachusetts corporation | § § § | |
| Defendant. | § | |

**PLAINTIFFS' RESPONSE TO DEFENDANT'S
MOTION TO EXAMINE MINOR PLAINTIFF, C.H.**

Plaintiffs, Nicole Hinson, Individually and as Next Friend of C.H., a Minor, and Cameron Hinson ("Plaintiffs") hereby file this Response to Defendant's Motion to Examine Minor Plaintiff, C.H. In support thereof, Plaintiffs would show unto the Court as follows:

**BACKGROUND**

**A.     The Unnecessary Dangers of Forward-Facing Car Seats**

This is a products liability and negligence case involving the design, sale, and marketing of a car seat. Defendant Dorel Juvenile Group, Inc. ("Dorel") designed, manufactured, and marketed the subject car seat under its "Safety 1st" brand name as the "Summit Deluxe." Nicole Hinson purchased the Safety 1st Summit Deluxe at K-Mart in Longview when her son C.H. was approximately 13-months old. The Safety 1st Summit Deluxe, is a forward-facing only seat and was noted on its packaging and in its instructions to be appropriate for any child over the age of one and weighing more than 22 pounds.

On May 15, 2013, C.H. was riding in his Summit Deluxe car seat, buckled in a forward-facing position behind the passenger seat in his father's Chevy Silverado pick-up. Around 5 p.m.,

a Suburban driven by Ms. Stacey Tilley crossed the center-line and impacted the Hinson family vehicle nearly head-on. The Hinson family was taken by ambulance to a nearby hospital. Nicole Hinson was treated for relatively minor injuries and released that evening, while Cameron Hinson suffered a broken ankle and was hospitalized for a few days. C.H. suffered a spinal cord injury which has left him permanently paralyzed from the waist down.

What the Hinson family did not know is that the Safety 1st Summit Deluxe car seat was dangerous for a child like C.H. who is under 2-years old. In fact, Dorel's internal documents clearly evidence that forward-facing-only car seats, like the Summit Deluxe, increase the risk of spinal cord and other severe injuries by more than 75 percent. This marked increase in injury risk is due in part to the elasticity of the pediatric spine. In a crash with a forward facing seat, the spine of a child is more likely to bear a significant portion of the forces of the collision. On the other hand, a rear-facing seat supports the entire torso, neck, head, and pelvis, and as a result distributes the crash forces over the entire body.

In 2011, two years before C.H.'s injuries, Dorel issued a press release agreeing with the American Academy of Pediatrics (AAP) guidelines stating that a child under the age of two should not ride in a forward facing seat, and instead should remain in a rear-facing seat. Unfortunately, this press release was the extent of Dorel's action on this vitally important issue. While Dorel made these comments out of the public-relations-side of its mouth, it kept the side dedicated to warning customers of the safety hazard tightly shut. Dorel chose to keep printing the same labels and instructions for seats like the Summit Deluxe—completely omitting any warning regarding the dangers of allowing a child under two to ride forward facing.

Plaintiffs claim that Dorel was negligent in continuing to package and sell forward-facing only car seats for use with young infants. Had C.H. been in a rear-facing car-seat, his head and

spine would have been pocketed into the seat back during the subject frontal collision and he would not have suffered any serious injuries.

**B.      Dorel's "Need" to Examine Four-Year-Old C.H.**

During the pendency of this case, Plaintiffs have provided Dorel with a voluminous amount of medical records dating back to C.H.'s birth, as well as therapy records since the time of the accident. Moreover, Dorel has deposed both of C.H.'s parents, and C.H.'s grandmother. Plaintiffs have listed all of C.H.'s treating physicians' identities and contact information in their Rule 26 disclosures. Finally, in January of 2016, per the request of Defendant's counsel, C.H. was transported to a mutually agreeable location where Dorel's counsel was permitted to interact with him and observe his behavior and physical conditions. Despite all of this, Defendant filed the underlying Motion seeking to examine C.H. pursuant to Federal Rule of Civil Procedure 35. For the reasons discussed in more detail below, Plaintiffs oppose this Motion and this Court should deny it.

**ARGUMENT AND AUTHORITIES**

**A.      Legal Standard**

Federal Rule of Civil Procedure 35 governs a party's request for a physical or mental examination of another party. Rule 35 is permissive, and the trial court has broad discretion whether to order an examination.[1] An order denying an examination is reviewed for abuse of discretion.[2] A party seeking an order of examination must demonstrate: (1) that the particular mental or physical condition is in controversy; and (2) that good cause exists for an examination.[3] A party seeking a court order of examination must affirmatively show each

---
[1] *See Diaz v. Con-Way Truckload, Inc.*, 279 F.R.D. 412, 423 (S.D. Tex. 2012).
[2] *See Herrera v. Lufkin Industries, Inc.*, 474 F.3d 675, 688 (10th Cir. 2007).
[3] Fed. R. Civ. P. 35(a).

3

condition that is in controversy and state the facts supporting good cause for an examination.[4] Conclusory allegations are insufficient.[5] The Supreme Court as explained the following:

> "[Rule 35] requires discriminating application by the trial judge, who must decide, as an initial matter in every case, whether the party requesting a mental or physical examination or emanations has adequately demonstrated the existence of the Rule's requirements of 'in controversy' and 'good cause.'"[6]

**B.     Dorel's Inaction**

For over a year Dorel has been well-aware of the names and contact information for all of C.H.'s treating physicians. These include doctors in Tyler, Longview, and Dallas. During that time frame, Dorel decided not to depose a single treating doctor. In fact, the only deposition Dorel has conducted to discover any information concerning C.H.'s medical condition was a very brief deposition of a nurse practitioner in Longview. Dorel's expressed "need" to gain new information regarding C.H.'s medical and mental condition is undermined by its total inaction to seek any such information. In fact, Dorel's request for an "examination" of C.H. was raised only a few weeks before Dorel's expert deadline. Further, Dorel seeks an interview of Nicole Hinson—whose mental condition is not at issue in this case. Dorel's deadline for designating its expert witnesses was March 11, 2016. Dorel had more than a year to conduct discovery concerning C.H.'s physical condition, conduct any physician depositions they believed necessary and otherwise prepare their expert reports. Only at the eleventh hour has Dorel sought any examination. Moreover, as set forth below the requested examination itself is improper. Dorel's effort appears to be less about any purported good cause, and more about trial tactics that would

---

[4] *See Bradford Felmy v. Hills*, 222 F.R.D. 257, 259 (D.V.I. 2004).
[5] *See Schalegenhav v. Holder*, 379 U.S. 104, 118, 85 S. Ct. 234, 13 L. Ed. 2d 152, 9 Fed. R. Serv. 2d 35A.1, Case 1 (1964).
[6] *See Schalegenhav v. Holder*, 379 U.S. 104, 121, 85 S. Ct. 234, 13 L. Ed. 2d 152, 9 Fed. R. Serv. 2d 35A.1, Case 1 (1964).

simply allow Dorel's experts to testify they "personally examined" C.H in an effort to superficially bolster their opinions for the jury.

**C.     Dorel's Request to "Examine C.H." is Effectively a Second Deposition of Ms. Hinson**

Nicole Hinson has already been deposed in this case. In her deposition, she was questioned for several hours, asked numerous questions about C.H., his medical condition, and his needs. It was immediately after this deposition, when Dorel first expressed a desire for their experts to visit C.H. in his home. At this point in time, Dorel's counsel framed their request as a simple house visit to allow Dorel's medical experts to observe C.H.'s living conditions. Plaintiffs raised no objection and readily agreed to such an exercise. When Dorel requested an interview to take place as well, Plaintiffs requested an outline or protocol explaining the nature of the interview. Dorel forwarded their expert's interview forms containing questions their expert planned to ask Ms. Hinson in her home.[7] The interview form includes questions that relate to the identity of treating physicians and therapists, the names of current medications, anticipated hospitalizations, and necessary medical supplies. While some of the questions were not out of the ordinary for a routine medical visit, many were improper, and all of the questions could have easily been asked at Ms. Hinson's deposition. Moreover, almost all are readily answered by a review of the medical records previously disclosed.

For example, Dorel's interview forms include the following questions:

- "What grade is your child in?"[8]
- "Has your child been hospitalized?"[9]
- "Was the child very quiet as a baby?"[10]
- "Please describe your child's personality."[11]
- "Who disciplines [the child] and how?"[12]

---

[7] *See* Dorel's Interview Form, **Exhibit A.**
[8] Dorel's Interview Form, p. 4, ¶ VI. 1; **Exhibit A.**
[9] Dorel's Interview Form, p. 6, ¶ VII. 15; **Exhibit A.**
[10] Dorel's Interview Form, p. 3, ¶ V. 1; **Exhibit A.**
[11] Dorel's Interview Form, p. 6, ¶VIII. 1; **Exhibit A.**

Of course, Dorel had every opportunity to ask each of these questions, and others like them, at Ms. Hinson's deposition. After reviewing the questions contained in the interview form, Plaintiffs' counsel responded by noting which questions would be allowed and which questions Plaintiffs' counsel believed to be inappropriate.[13] Plaintiffs' counsel pointed out the same point made above — many of the proposed questions were the types of questions that could have easily been (and many were) asked in Ms. Hinson's depositions and therefore, should not be rehashed in an interview.

Plaintiffs' counsel offered to respond to all of the appropriate questions in written form as well as permit Dorel's experts to come to the Hinson home and view C.H.'s living conditions.[14] Dorel refused and would not agree to eliminate or limit any questions similar to those outlined above. Instead, Dorel filed the instant Motion, which includes the insinuation that C.H. is not injured and that Plaintiffs are attempting to hide him from physicians.[15] Pursuant to Rule 35, Dorel has the burden to affirmatively show that good cause exists for the proposed examination. Dorel deposed Nicole Hinson long after it had the chance to consult with its experts and prepare the questions needed for the "interview." Dorel's Motion effectively seeks to re-depose Nicole Hinson providing Dorel a second bite at the apple. Because Dorel has not and cannot meet its burden to show good cause required by Rule 35, the Court must deny its Motion.

**D.    There is No Good Cause to Put C.H. Through Another Battery of Tests**

C.H. is a four-year old little boy with severe and debilitating injuries. Despite Dorel's insinuations, C.H. and his family struggle every day to deal with the devastating injuries he suffered in the subject collision. Dr. Arthur Joyce, a Board Certified Neuropsychologist

---

[12] Dorel's Interview Form, p. 7, ¶IX. 7; **Exhibit A.**
[13] *See* Feb. 2, 2016 email **Exhibit B** and **Exhibit A.**
[14] *See* **Exhibit B.**
[15] See Dorel's Motion pp. 5–6.

6

examined C.H. and performed the accepted set of diagnostic tests upon C.H. in order to evaluate his neuropsychological functioning. Dr. Joyce's evaluation and testing took place in limited time intervals over the course of two days. These tests include the Vineland Adaptive Behavior Scales–Second Edition; Wechsler Preschool and Primary Scale of Intelligence–Fourth Edition; and the Gordon Diagnostic System.[16] These tests are standardized and widely accepted for use in evaluating a variety of factors that assist in diagnosing traumatic brain injuries in young children. These tests evaluate factors such as the ability to complete simple tasks, focus, inhibition, language, verbal and perceptual abilities, reasoning, working memory, and processing speed.[17] Many of these standardized tests are designed to collect objective data and compare the patient to his peers. For example, one test involves the doctor asking the child to press a blue button attached to a machine. Then the doctor asks the child to wait a period of time before pressing the button again. The child is scored based on their ability to wait for a certain period of time before pressing the button again.[18] While it is unclear from Dorel's Motion, it appears that Dorel wants to subject C.H. to another round of the same or substantially similar tests and evaluations. There is simply no good reason to subject C.H. and his family to such an exercise.

Rule 35 requires that there be good cause for the requested examination.[19] This requires a greater showing of need than other discovery requests do.[20] A Defendant must show that the examination could adduce specific facts necessary to Defendant's case.[21] In evaluating this element, Courts look at whether a defendant has exhausted alternative discovery procedures before requesting the examination.[22] A defendant cannot simply seek a repetitive examination of

---

[16] Dr. Joyce's Deposition, pp. 53–54. **Exhibit C**.
[17] Dr. Joyce's Deposition, pp. 34–35. **Exhibit C**
[18] Dr. Joyce's Deposition, pp. 34–35. **Exhibit C**
[19] Fed. R. Civ. P. 35(a).
[20] *Shumaker v. West,* 196 FRD 454, 457 (S.D. W.Va. 2000).
[21] *Ornelas v. Southern Tire Mart*, LLC., 292 FRD 388, 391 (S.D. Tex. 2013).
[22] *Lahr v. Fulbright & Jaworski*, 164 FRD 196, 200 (N.D. Tex. 1995).

its own.[23] If the examination being requested is no different than prior exams, then good cause does not exist.[24]

Defendant has not met its burden to show good cause exists. Defendant even admits that its psychologist expert cannot determine if additional testing of C.H. will be necessary until he reviews the traumatic brain injury opinions provided by neuropsychologist Arthur Joyce, as well as the underlying data for those opinions.[25] Defendant further admits that Dr. Joyce's deposition has already been taken; it just has not yet been reviewed by Defendant's psychologist expert.[26] Clearly, reviewing Dr. Joyce's deposition transcripts, notes, and underlying data would be a much less intrusive means of obtaining information before seeking to force C.H. to be subjected to another battery of tests.

Moreover, Defendant has been provided all of C.H.'s medical records, which include records dating back to C.H.'s birth. In fact, the most recent records produced include healthcare visits that C.H. has had within the last few weeks. Moreover, Defendant has chosen not to depose any of C.H.'s many treating physicians. Defendant has served written discovery, including Interrogatories and Requests for Admission. Plaintiff has also provided Defendant with discovery responses, document production, and every conceivable medical record for C.H.. As a result, little, if any new information could possibly come from an examination of C.H. Rather, Defendant's psychologist expert already has access to the information being sought, and can obtain all of the answers simply by reviewing the ample medical and testimonial evidence that has already been provided.[27] Information obtained by performing the same battery of

---

[23] *Doe v. The District of Columbia*, 229 FRD 24, 27 (D. D.C. 2005), *citing Acosta v. Tenneco Oil Co.*, 913 F.2d 205 (5th Cir. 1990).
[24] *Doe v. The District of Columbia*, 229 FRD 24, 27 (D.D.C. 2005)*, citing Stewart v. Burlington Northern Railroad Co.*, 162 FRD 349 (D. Minn. 1995).
[25] *See* Dorel's Motion, at pp. 7–8.
[26] *Id.*
[27] *Shumaker v. West*, 196 FRD 454, 457 (S.D. W.Va. 2000).

standardized testing upon C.H. would be entirely duplicative, cumulative, and as a result unreasonably burdensome on C.H. — all reasons that stand in stark contrast to purpose of the Rule.[28]

### E. Dorel Has Failed to Comply With Rule 35

Under Rule 35, Defendant is required to specify the time, place, manner, conditions, and scope of the examination, and the person by whom it is to be made.[29] If sufficient details are not provided regarding the proposed examination, then the Court may deny it.[30] Such details include the conditions and scope of the examination.[31]

Defendant has failed to provide sufficient, or even minimal, information regarding the requested examination. Defendant has not even identified whether the examination would be physical or mental in nature. In fact, Defendant's Motion for the first time mentions the attendance of a physical medicine and rehabilitation physician, Juan Latorre, MD.[32] Until Dorel filed its Motion, Plaintiffs had never heard of Dr. Latorre and certainly did not know of any requested medical examination. Dr. Latorre's name has never been brought up before, and plans for him to attend the proposed examination are surprising, since the case-law is wrought with examples of neuropsychologists testifying that someone else's presence during the interview or examination is a hindrance.[33]

The bottom line is that Defendant has failed to comply with Rule 35 by not providing sufficient information regarding details such as the manner, conditions, and scope of the

---

[28] *Acosta v. Tenneco Oil Company*, 913 F.2d 205, 210 (5th Cir. 1990).
[29] *Doe v. The District of Columbia,* 229 FRD 24, 26 (D.C.D.C. 2005).
[30] *Calderon v. Reederei Claus*, 258 FRD 523, 526 (S.D. Fla. 2009), *citing Woods v. Century I.,* 1993 WL 33339 (D. Kan. 1993).
[31] *Kador v. City of New Roads*, 2013 WL 2133889, 3 (M.D. La. 2010).
[32] *See* Defendant's Motion to Examine Minor Plaintiff, C.H. at Page 6.
[33] *Ragge v. MCA Universal Studios*, 165 FRD 605, 609-610 (C.D. Cal. 1995); *see also Tomlin v. Holecek*, 150 FRD 628 (D. Minn. 1993); *see also Galieti v. State Farm Mutual Automobile Ins. Co.*, 154 FRD 262, 264 (D. Colo. 1994).

requested examination. Rather, other than a few generalities and the interview form, Defendant provides little to no information on any of these issues. And, regarding the scope, as stated above, every single inquiry on the questionnaire attached to Defendant's Motion can be readily answered through the records, discovery responses, and deposition testimony previously provided.

## CONCLUSION AND PRAYER

Plaintiffs pray that the Court deny Defendant's Motion to Examine Minor Plaintiff, C.H. in its entirety. Plaintiffs also request all such further relief, both at law and in equity, to which they may justly be entitled to receive.

Respectfully submitted,

/s/Jeffrey T. Embry
Jeffery T. Embry
State Bar No. 24002052
Attorney-in-Charge
George Cowden IV
State Bar No. 24071492
Kyna J. Adams
State Bar No. 24041792
Hossley & Embry, LLP
320 South Broadway Avenue, Suite 100
Tyler, Texas 75702
Ph. (903) 526-1772
Fax (903) 526-1773
jeff@hossleyembry.com
george@hossleyembry.com
kyna@hossleyembry.com
**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that a true and correct copy of this Response was served on all counsel of record electronically and via the Court's filing system on the 14th day of March, 2016.

/s/Jeffrey T. Embry
**Jeffery T. Embry**