**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

NICOLE HINSON, Individually and as Next Friend of C.H., a Minor; and CAMERON HINSON, Texas residents,

Plaintiffs

v.

DOREL JUVENILE GROUP, INC., a Massachusetts corporation,

Defendant.

Case No. 2:15-cv-00713

**DEFENDANT DOREL JUVENILE GROUP, INC.'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Minor Plaintiff C.H. suffered an unusual lower thoracic spinal cord injury during an incredibly severe accident that occurred on May 15, 2013. During the accident, C.H. was in a 5-point, forward-facing Summit Deluxe child car seat manufactured in Indiana by the defendant, Dorel Juvenile Group, Inc. ("Dorel"). Plaintiffs contend that C.H. should not have been using the Summit at all because he was under two years old, and Dorel should have warned the Hinsons that he should only ride rear-facing. Dorel has responded that the Summit was tested extensively for frontal crashes like this one, that it complied with all relevant regulations, and that it is reasonably safe for children like C.H. when used as intended.

Plaintiffs have moved for partial summary judgment on five issues: 1) C.H.'s contributory negligence, 2) Plaintiff Cameron Hinson's contributory negligence, 3) the rebuttable presumption of non-defectiveness under Section 82.008, 4) Dorel's state-of-

the-art defense, and 5) Plaintiffs' failure to mitigate damages. Many of these issues seem better suited for motions *in limine* or for the charge conference so the parties and the Court can address the evidence actually elicited at trial. Regardless, for the reasons set forth below, the motion should be denied.

**RESPONSE TO PLAINTIFFS' STATEMENT OF FACTS**

Dorel responds to each numbered paragraph in Plaintiffs' "Statement of Undisputed Material Facts" as follows:

1. On May 15, 2013, the Hinson family's truck was struck by a Suburban.

**Response:** Undisputed.

2. At the time of the accident, C.H. was riding in a car seat manufactured by Defendant Dorel Juvenile Group, Inc. known as the Summit Safety 1st.

**Response:** Undisputed; to clarify, Safety 1st is the brand name and the Summit is the model name.

3. The subject car seat is a forward-facing only seat.

**Response:** Undisputed.

4. At the time of the accident, C.H. was 22-months old.

**Response:** Undisputed.

5. The subject car seat was manufactured on March 2, 2012.

**Response:** Undisputed.

6. The ownership manual for the subject car seat states that it is appropriate for children over the age of one who are between 22 and 100 pounds.

**Response:** Undisputed.

7. In March of 2011, the American Academy of Pediatrics (AAP) announced a recommendation that advised children to continue to be rear-facing in their car seats until the age of 2.

**Response:** Disputed as vague and argumentative. In addition, Plaintiff cites no particular authority for this allegedly undisputed fact, and it must therefore be rejected *prima facie*.

8. On March 22, 2011, Dorel issued a press release agreeing with AAP's recommendations.

**Response:** Undisputed.

9. As early as 2009, Dorel executives endorsed the notion that children should remain rear facing until age 4 for their safety.

**Response:** Disputed as vague and argumentative. (*See also* Doc. No. 63 at 3 (citing evidence demonstrating safety of the forward-facing Summit).) In addition, Plaintiff cites no particular authority for this allegedly undisputed fact, and it must therefore be rejected *prima facie*.

10. The federal standard that applied to child restraint systems on the date of the subject car seat's manufacture was Federal Motor Vehicle Safety Standard (FMVSS) 213.

**Response:** Undisputed.

11. FMVSS 213 does not address the risk of injury for a child in forward versus rear-facing car seat.

**Response:** Disputed as set forth at length below. In addition, Plaintiff cites no particular authority for this allegedly undisputed fact, and it must therefore be rejected *prima facie*.

In response to Plaintiffs' Statement of Facts, Dorel also references and fully incorporates herein all the summary judgment evidence it submitted with its own motion. (*See* Doc. No. 63 and exhibits attached thereto.)

**RESPONSE TO STATEMENT OF THE ISSUES**

1. Plaintiffs' motion should denied as moot with respect to whether C.H. may be found contributorily negligent, but the jury is nevertheless entitled to consider evidence and argument regarding the possibility C.H. moved the Summit's straps from his shoulders before the accident.

2. There is a genuine issue of material fact as to the contributory negligence of Cameron Hinson.

3. Dorel is entitled to a rebuttable presumption of non-defectiveness under Civil Practice & Remedies Code § 82.008, because FMVSS 213 addresses the relevant risk and there is no dispute the Summit complied with that standard.

4. Plaintiffs' motion should denied as moot with respect to whether it was technologically or economically feasible to change the Summit's warnings or instructions, but the jury is nevertheless entitled to consider evidence and argument that the Summit was reasonably safe at the time it was sold.

5. There is a genuine issue of material fact as to Plaintiffs' failure to mitigate damages.

## ARGUMENT

### I. Summary Judgment for Plaintiffs as to C.H.'s Contributory Negligence is Only Appropriate to the Extent it Would not Preclude Dorel from Presenting Evidence and Argument that C.H. Moved the Summit's Shoulder Straps Before the Crash.

Dorel does not intend to argue to the jury that C.H. was legally negligent or that C.H. should be placed on the verdict form. To the extent that is all Plaintiffs seek to confirm, Plaintiffs' motion for summary judgment on this issue should be denied as moot.

However, the placement of C.H.'s harness straps immediately before the accident is a critical issue in this case. Put simply, there is substantial evidence the straps were not on C.H.'s shoulders at the time of the crash as required by the product instructions, and Dorel's experts will testify that this misuse was the producing cause of C.H.'s thoracic spine injury, not the design or instructions of the Summit child seat.

Fault for misuse of the Summit child seat is attributable to Mr. and Mrs. Hinson, not C.H. To the extent the Court is inclined to grant Plaintiffs' summary judgment motion on this issue, Dorel respectfully requests that any such order be limited to C.H.'s fault, and not in any way preclude the presentation of evidence about the location of C.H.'s shoulder straps and the fault of C.H.'s parents (who will be on the verdict form regardless) in allowing the seat to be so seriously misused.

### II. There is Evidence in the Record from Which a Reasonable Jury Could Conclude Cameron Hinson was Contributorily Negligent.

Jurors should also be able to consider all the circumstances surrounding the accident and draw their own conclusions about whether Mr. Hinson was driving

negligently. In their motion, Plaintiffs focus on the fact that only Ms. Tilley, the driver of the other vehicle, received a ticket after the accident, but they never explain why that is supposedly dispositive. In fact, the evidence shows that Mr. Hinson was driving about sixty-five miles per hour just before the accident despite wet conditions. (*See* Transcript of 2/23/16 Deposition of D. Phillips, Ex. A at 82:3-13.) The question of a party's fault in an automobile accident is for the jury to decide. *See Dornton v. Darby*, 373 F.2d 619, 621 (5th Cir. 1968) (reversing summary judgment because "there [were] or may be questions of negligence, contributory negligence and possibly unavoidable accident," and that "the solution of these questions requires an evidentiary trial").

A reasonable jury could conclude that Mr. Hinson was driving too fast, and that his conduct was a proximate cause of the accident. Accordingly, Plaintiffs' motion for summary judgment as to Cameron Hinson's comparative negligence should be denied.

## III. Dorel is Entitled to a Presumption Under Section 82.008 Based on the Summit's Compliance with FMVSS 213.

Because the Summit complied with Federal Motor Vehicle Safety Standard 213, Dorel is entitled to a presumption of non-defectiveness pursuant to Civil Practice & Remedies Code § 82.008. "Section 82.008 clearly provides for a rebuttable presumption [of non-defectiveness] if the product at issue . . . was manufactured in compliance with federal regulations that governed the product *risk* that allegedly caused the harm." *Wright v. Ford Motor Co.*, 508 F.3d 263, 270 (5th Cir. 2007) (affirming judgment for manufacturer) (emphasis in original); *see also Trenado v. Cooper Tire & Rubber Co.*, 465 Fed. Appx. 375, 380 (5th Cir. 2012) (unpublished) (affirming verdict for manufacture

and rejecting plaintiffs' attempt to define risk narrowly such that Section 82.008 would not apply).

Plaintiffs do not dispute that the Summit complied with FMVSS 213. Instead, they argue that FMVSS 213 does not "address the risks" of children riding forward facing versus rear facing or contain "seating criteria for that risk" (Motion at 9), and thus that the Summit's compliance with that rigorous standard should not give rise to a presumption. Plaintiffs are wrong about both FMVSS 213 and Section 82.008.

First, FMVSS 213 tests child seats that are both forward and rearward facing. *See* 49 C.F.R. 571.213 § 5.1.3.1(a) (table showing crash test criteria for "forward-facing child restraints"); 49 C.F.R. 571.213 § 5.1.3.2 (discussing same tests being run on "rear-facing child restraint systems"). Injury metrics are tracked from those tests analyzing the likelihood of both brain injury (which is at issue in this case) and chest injury (also at issue, given C.H.'s thoracic spinal cord injury). 49 C.F.R. 571.213 § 571.213 (a) & (b). A child restraint's performance rearward versus forward-facing can be compared, and in fact Dorel's expert, William Van Arsdell, did just that in his expert report. (*See* Excerpt from Van Arsdell Report, Ex. B; Transcript of 3/23/16 Deposition of W. Van Arsdell, Ex. C at 81:25–82:23.) On balance, the seats performed better forward- rather than rearward-facing. *See id.*

Second, FMVSS 213 does in fact incorporate "seating criteria for that risk" of being forward- versus rearward-facing. In fact, FMVSS 213 requires that rear-facing seats not be labeled for use by children less than 20 pounds of weight:

> Use only in a rear-facing position when using it with an infant weighing less than (insert a recommended weight that is not less than 20 pounds).

49 C.F.R. 571.213 § 5.5.2(k)(2). Dorel's position is that the safety regulation's position is reasonable and adequate; Plaintiffs contend it is not. This is exactly the situation in which Texas legislators decided that the standard should be presumed to establish reasonable safety of a compliant product. Plaintiffs are welcome to argue that the presumption is overcome by the evidence at trial, but they cannot strip the standard of its legislatively-authorized presumption of providing adequate safety.

A federal standard does not have to address each and every issue in a particular case or crash in order to be applicable. By definition, every safety standard is broad because it sets a ***standard*** that governs a variety of possible situations. "[T]he applicability of the presumption in § 82.008(a) turns on the alleged risk, not on the alleged defect." *Trenado*, 465 Fed. Appx. at 380. Per FMVSS 213, "the purpose of this standard is to reduce the number of children killed or injured in motor vehicle crashes and in aircraft." 49 C.F.R. 571.213 § 2. Because C.H. was injured in a motor vehicle crash, he falls within the scope of risks considered by FMVSS 213, and it therefore actuates the presumption in § 82.008. *See Wright*, 508 F.3d at 380; *see also Trenado*, 465 Fed. Appx. at 380 (finding the FMVSS to be applicable even without a statement of purpose inside the subject standard).

FMVSS 213 addresses the supposed risk at issue (serious risks in motor vehicle accidents), and Plaintiffs' Summit complied with that standard. Dorel is thus entitled to

a rebuttable presumption of non-defectiveness under Section 82.008, and Plaintiffs' motion for summary judgment should be denied.

**IV. The Record Supports Dorel's State-of-the-Art Defense.**

Plaintiffs recognize that the state-of-the-art defense is at its core a matter of "rebuttable evidence" (*see* Motion at 11), but nevertheless move for summary judgment on the issue. The state-of-the-art defense is more closely related to a product's design than its warnings:

> The state of the art with respect to a particular product refers to the technological environment at the time of its manufacture. This technological environment includes the scientific knowledge, economic feasibility, and the practicalities of implementation when the product was manufactured. Evidence of this nature is important in determining whether a safer design was feasible. The limitations imposed by the state of the art at the time of manufacture may affect the feasibility of a safer design.

*Boatland of Houston, Inc. v. Bailey*, 609 S.W.2d 743, 748 (Tex. 1980). Plaintiffs do not now assert a design defect claim, and in any event, Dorel does not intend to argue that it was not scientifically, technologically, or economically feasible to change the labels on the Summit. Plaintiffs' motion should therefore be denied as moot.

However, as with the issue of C.H.'s negligence discussed above, to the extent the Court is inclined to grant Plaintiffs' motion or enter an order addressing the issue directly, Dorel respectfully requests that the order be specific and narrow. Just as Plaintiffs should be able to present reliable evidence of any developments concerning the forward versus rear-facing issue that relate to thoracic spinal cord injury, Dorel should be able to present similar rebuttal evidence. Dorel should also be able to argue

that the Summit is reasonably safe and Dorel had no reason to believe otherwise in part because it was tested extensively and complied with all relevant standards at the time it was sold. (*See* Dorel's Motion for Summary Judgment, Doc. No. 63 at 10-13.) Whether that is characterized as "state-of-the-art" evidence or something else, it is relevant and proper, and the jury is properly allowed to consider it.

**V. <u>The Record Support's Dorel's Failure to Mitigate Defense.</u>**

As explained in Dorel's Motion to Designate Responsible Third Parties (Doc. No. 18 at 2, 4-5), C.H. was examined by doctors and other medical professionals after the subject accident and then sent home. (*See* Transcript of 1/13/16 Deposition of Nicole Hinson, Ex. D at 83:18-25.) Four days later, C.H.'s family took him back to the hospital because he was not sitting up and walking around normally on his own. (*See id.* at 87:5-91:20.) Unfortunately, the physicians at Children's Medical Center determined that it was too late to treat C.H. with steroids and that no surgery would have been helpful after Plaintiffs' delay in seeking further treatment. (*See* Excerpts from Children's Medical Center Admission Notes, Ex. E.)

Plaintiffs' own life care planning expert, Dr. Amy Mackenzie, highlighted those notes and the potential consequences of the delay. (*See* MacKenzie Report Excerpt, Ex. F (Ex. 1 to 2/23/16 MacKenzie Dep. Tran. at 4)). Defendant's biomechanical expert's interpretation of the doctors' notes was similar: because there had been so much time between the injury and further treatment, there was "no role for them to use steroids," which can "be used [for] spinal cord injuries to reduce swelling." (*See* Rough Transcript of 5/6/16 Deposition of Lisa Gwin, Ex. G at 122:14-123:12.)

Evidence tending to show the failure to seek treatment in a timely manner may support a defense of failure to mitigate damages. *See Bullard v. Lynde*, 292 S.W.3d 142, 145 (Tex. Ct. App. 2009). As set forth above, there is such evidence in this case. Furthermore, this issue is particularly ill-suited for decision before trial, and should not be addressed until the charge conference. Accordingly, Plaintiffs' motion for summary judgment as to mitigation should be denied.

**CONCLUSION**

For the reasons set forth above, Plaintiffs' Motion for Partial Summary Judgment should be denied in its entirety.

Respectfully submitted,

/s/ Jonathan Judge

Anthony A. Avey (Attorney-in-Charge)
AVEY & ASSOCIATES, PLLC
Texas State Bar No. 00790250
14255 Blanco Road
San Antonio, Texas 78216
Telephone: (210) 308-6600
Facsimile: (210) 308-6939
tavey@aveylaw.com

Jonathan Judge (pro hac vice)
Matthew G. Schiltz (pro hac vice)
SCHIFF HARDIN LLP
233 S. Wacker Drive, Suite 6600
Chicago, Illinois 60606
Telephone: (312) 258-5500
Facsimile: (312) 258-5600
jjudge@schiffhardin.com
mschiltz@schiffhardin.com

**ATTORNEYS FOR DEFENDANT DOREL JUVENILE GROUP, INC.**

**CERTIFICATE OF SERVICE**

I hereby certify that I caused the foregoing to be filed on May 13, 2016, with the Clerk of Court using the CM/ECF System, which will automatically send e-mail notification of such filing and a link to a copy of the document to all attorneys of record.

/s/ Jonathan Judge
Jonathan Judge