# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

NICOLE HINSON, Individually and as   )
Next Friend of C.H., a Minor; and      )
CAMERON HINSON, Texas residents,  )    Case No. 2:15-cv-00713
                                   )
          Plaintiffs          )
      v.                       )
DOREL JUVENILE GROUP, INC., a     )
Massachusetts corporation,         )

          Defendant.

## DEFENDANT DOREL JUVENILE GROUP, INC.'S
## MOTIONS *IN LIMINE* 1 THROUGH 13

TO THE HONORABLE UNITED STATES DISTRICT COURT:

COMES NOW Defendant Dorel Juvenile Group, Inc. ("Dorel"), by counsel, who submits this Motion *in Limine*, and requests that the Court rule in advance on several evidentiary topics that are likely to arise during and affect the course of trial.

**I.**     **Evidence or Argument Concerning the Filing of a Motion *in Limine* on any Topic Should be Excluded.**

Pre-trial procedural matters are irrelevant.  The fact that a party has filed a motion *in limine*, or that the Court has entered an Order on that motion, does not make any fact more or less probable in this case.  Vague references to the "filing of a motion to keep out evidence" could improperly suggest to the jury that the subject of their deliberations should be something other than the evidence presented in open court.  Dorel respectfully requests an Order to preclude Plaintiffs from introducing any evidence relating to the filing of any motion *in limine*.   Because such evidence is not

relevant to Plaintiffs' claim and could suggest an improper basis for a verdict, it should

be excluded under Federal Rules of Evidence 402 and 403.

## II.   Evidence or Argument Concerning the Insurance Industry or Dorel's Insurance Coverage Should be Excluded, Including During Voir Dire.

It is well settled that evidence of whether or not a defendant carries liability

insurance is neither relevant nor admissible, and the introduction of such evidence may

result in unfair prejudice.  Fed. R. Evid. 411; *see also Reed v. GM Corp.*, 773 F.2d 660, 663

(5th Cir. 1985).  Whether and to what extent Dorel is insured makes no material fact

more or less probable, and evidence of insurance would unfairly suggest that Dorel can

"afford" to pay for damages it did not cause.  The Court should therefore prohibit all

references to insurance, including any mention during *voir dire* of the name of Dorel's

insurance carrier.

## III.   Evidence or Argument Concerning Plaintiffs' Possible Taxation or the Need to Pay an Attorney Should be Excluded.

The parties' mutual need to pay for counsel and the fact that Plaintiffs' damages

may be taxed are both irrelevant, and related evidence or argument could suggest to

jurors that they should make a decision based on sympathy rather than reason.  Dorel

thus respectfully requests that this Court exclude all evidence of and prohibit any

reference to such matters pursuant to Rules of Evidence 402 and 403.

## IV.   Evidence or Argument Concerning Literature not Discussing Thoracic Spinal Cord Injuries Should be Excluded.

As the Court is aware from the parties' summary judgment briefing, some of

Plaintiffs' proffered evidence refers to the supposed benefits of rear-facing child car

seats on the possible prevention of "spinal cord injuries." Defense expert William W.

Van Arsdell, Ph.D., P.E., explained that these articles are discussing cervical spinal cord injuries (neck area), not thoracic / lumbar spinal cord injuries (2/3 of the way down the back) like that sustained by C.H.  (Van Arsdell Dep. pp. 71:20-72:18, Ex. A).

At his deposition, when asked about the same literature, Plaintiff's car seat expert Gary Whitman agreed that it was cervical spine / neck injuries that were being discussed in these papers, not thoracic / lumbar spinal cord injuries.  (Whitman Dep. pp. 57:13-19, 59:23-60:23, 61:1-17, 65:22-66:5, Ex. B).  In fact, none of the papers cited by Mr. Whitman (or plaintiffs) predating the manufacture of C.H.'s car seat appear to discuss the risk of thoracic / lumbar spinal cord injuries at all, probably because none of the experts in this case has ever heard of a child in a five-point harness seat suffering such an injury, forward-facing **or** rear-facing, ever at any time.

From their exhibit list, it appears that Plaintiffs intend to bombard the jury with a supposed "timeline" of "notice" Defendant had about the risk of C.H. suffering his injury, supposedly going back decades.  Since it is conceded that none of these documents actually reference or have any reason to discuss thoracic / lumbar injuries, testimony that suggests otherwise is not relevant, and any dubious relevance such testimony might have substantially outweighed by the danger of misleading the jury as to the content of those documents, wasting considerable time, and unfairly prejudicing Defendant.

If Plaintiffs have literature or testing results that they (a) have timely disclosed, (b) do not otherwise violate the Court's evidentiary rulings, and (c) that they can show were published before C.H.'s seat was made, which actually discuss a risk of thoracic-

lumbar injuries in 5-point forward-facing seats, then perhaps that evidence could be presented. But with respect to any remaining articles, any suggestion that these materials were forecasting an injury mechanism never been seen before in C.H.'s type of seat is grossly misleading.

The Court should bar references to literature about the supposed dangers of being forward-facing between the ages of 1 and 2 until Plaintiffs can make the threshold showing referred to above.

**V.     Evidence or Argument Concerning EMS's Transfer of C.H. to the ER in a Rear-Facing Direction/Seat Should be Excluded.**

C.H. was transported by EMS to the ER in the subject car seat in a rear facing "captain's chair" in the ambulance.  Any reference to this rear facing direction is irrelevant.  Further, to allow such evidence would give the false impression that the first responders endorsed Plaintiffs' theory that rear facing is safer.  This implication would confuse the jury and be highly prejudicial to Defendant.  Fed. R. Evid. 403.  Finally, the EMTs who would offer such evidence are not experts in car seats or their direction under Rule 702.

**VI.     Evidence or Argument Concerning Discovery Conduct Should be Excluded.**

The parties' conduct during discovery is irrelevant.  For example, references to the failure to produce a given document could improperly suggest to the jury that the subject of their deliberations should be something other than the evidence presented in open court.  Dorel respectfully requests that this Court exclude all evidence of and prohibit any reference to the procedural matters of this litigation pursuant to Rules of

Evidence 402 and 403.

**VII.   Evidence or Argument Concerning Counsel's Compensation or the Location of Their Offices Should be Excluded.**

It is "undoubtedly true that, in general, neither the wealth nor the poverty of a party litigant is for consideration when his duties or rights are under judicial investigation." *Sec. Trust Co. v. Robb,* 142 F. 78, 84 (3d Cir. 1906); *see also Smith v. Belterra Resort Indiana, LLC,* No. 4:06-cv-172-WGH-JDT, 2007 WL 4238959, at *1 (S.D. Ind. Nov. 27, 2007) (granting motion *in limine* in part and excluding testimony or evidence concerning defendant's wealth, assets, or ability to pay any judgment).  Such evidence is likely to inflame and incite the jury.   Moreover, it is inappropriate to contrast differences in financial status between parties.  *See Draper v. Airco, Inc.,* 580 F.2d 91, 95 (3d Cir. 1978) (citing *Foster v. Crawford Shipping Co., Ltd.,* 496 F.2d 788, 792 (3d Cir. 1974)) (finding error in plaintiff's counsel's statements in closing argument that the case was the "equalizer" between a wealthy defendant and a poor plaintiff, and asking jurors to "tumble the magnificent big companies").

In light of the foregoing authority, it should go without saying that direct references by any party to the perceived assets of Dorel are *per se* improper.  Such references, however, are not always explicit.  For example, Plaintiffs may attempt to undercut their burden of proof by suggesting that they lack the resources of Dorel. Plaintiffs also should not be permitted to make any references to Dorel's alleged litigation resources, its choice of attorneys or the financial condition, size, fees, or office locations of its attorneys.  Such references are irrelevant, misleading, and unfair.

Both Plaintiffs and Dorel are represented in this case by capable trial counsel with considerable resources at their disposal.  Plaintiffs' counsel has hired many experts and had ample time to investigate the crash, marshal evidence, and run whatever tests thought to be advisable.  This case should be tried solely on the merits of that timely investigated and disclosed evidence, and the evidence that the Dorel, in turn, has marshaled against it.

Any argument along these lines should be prohibited.

## VIII. Evidence or Argument Concerning Dorel's Profit Margins or Supposedly Nefarious Marketing Motives Should be Excluded.

Federal Rules of Evidence 401 and 402 provide that only relevant evidence is admissible at trial, and evidence is relevant only if it tends "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  However, even relevant evidence may still be excluded.  Federal Rule of Evidence 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."

In order to prevail on their marketing defect claim, Plaintiffs must show that some foreseeable risk could have been reduced or avoided by the adoption of a reasonable alternative warning.  Any theoretical motive on Dorel's part to increase sales is not relevant to Plaintiffs' claims, and the Court should therefore exclude references on that point pursuant to Federal Rule of Evidence 402.  *See, e.g.*, *In re Norplant Contraceptive Prods. Liab. Litig.*, No. MDL 1038, 1997 WL 80526, at *1 (E.D. Tex. Feb. 19,

1997) (holding that evidence of defendant's profit margin was not relevant to plaintiff's products liability action); *Gray v. Hoffman-La Roche, Inc.*, 82 Fed. App'x 639, 651 (10th Cir. 2003) (affirming exclusion of evidence regarding alleged profit motive in a products liability case). In both *Norplant* and *Gray*, the plaintiffs attempted to introduce evidence that defendants had not taken proper precautions with their products because they were concerned about profit motives. Both courts held that evidence regarding the defendants' motivation was immaterial to the claims at issue. *Gray*, 82 Fed. App'x at 651; *Norplant*, 1997 WL 80526 at *1.

The Court should similarly exclude such evidence here as irrelevant. *See* Fed. R. Evid. 402. Any theoretical motive on Dorel's part to increase sales will not change the content of the relevant safety standards or alter the framework the jury must apply to evaluate whether the Summit is reasonably safe. Whether Dorel made a profit or lost its shirt in selling the seat does not make it more or less defective. The warnings on the Summit seat are either adequate or they are not.

Moreover, any reference to profit margins would be unfairly prejudicial to Dorel. As the *Norplant* court found, even in a case involving a claim for punitive damages, the remote relevance of such evidence "would be outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence." *Norplant*, 1997 WL 80526 at *1. Furthermore, references to such evidence would impermissibly imply to the jury either that Dorel could somehow "afford" to pay a judgment regardless of whether it actually did anything wrong, or to suggest that Dorel ought not to be

profitable in difficult economic times.  The likelihood of unfair prejudice far outweighs any dubious connection that might be drawn between profitability and the actual safety, as demonstrated through objective testing and analysis. This Court should follow *Norplant*, and preclude all references to Dorel's alleged profits pursuant to Federal Rules of Evidence 402 and 403.

## IX.     Evidence or Argument Concerning the Impact of C.H.'s Injuries on the Hinson Family Should be Excluded.

The only relevant issues in this case are whether the Summit is defective and whether any such defect caused C.H.'s injuries.  Testimony about C.H.'s physical injuries is certainly permissible, but evidence about the effect of those injuries on his family, or its ongoing emotional impact on them, is not relevant to any question the jury will be called upon to decide.  No family member or other individual connected to C.H. is permitted to recover any damages for anguish or emotional distress.  Allowing Plaintiffs to present evidence about the effect off C.H.'s injuries on them personally and their aspirations, in addition to being irrelevant, would serve only to elicit sympathy from the jury and encourage a verdict based on emotion rather than reason, and to include a component of non-economic damages for people not entitled to recover one.

Accordingly, evidence about the impact of the accident of C.H.'s injury on anyone but C.H. should be barred because it is irrelevant to the issue of whether the Summit was defective, and any minimal probative value is far outweighed by jury prejudice that would result.  *See* Fed. R. Evid. 403.

X.      **In-Court Demonstratives Should be Excluded Without a Prior Presentation Outside the Presence of the Jury.**

It is well within the Court's discretion to exclude demonstrative evidence that is irrelevant or has minimal probative value.  *See, e.g., Johnson v. William C. Ellis & Sons Iron Works, Inc.*, 604 F.2d 950, 958 (5th Cir. 1979) (affirming trial court's refusal to admit demonstrative video due to danger of unfair prejudice), *modified on denial of reh'g*, 609 F.2d 820 (5th Cir. 1980); *Tubar v. Clift*, No. C05-1154-JCC, 2009 WL 1325952, at *9 (W.D. Wash. May 12, 2009) (excluding demonstrative evidence pursuant to Rules 401 and 403).  That is because, at trial, only relevant evidence is admissible.  FED. R. EVID. 402. Furthermore, Federal Rule of Evidence 403 provides that "(t)he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

The Court should exercise its discretion, and prohibit all in-court demonstrations unless the proffering party and relevant witness can establish outside the presence of the jury that the demonstration complies with and is proper under all the Federal Rules of Evidence.  Dorel respectfully requests that the Court require Plaintiffs to present any in-court demonstrations to the Court at least 24 hours before Plaintiffs intend to use them at trial.  Dorel also requests the opportunity to review such demonstrations and to lodge any related objections prior to the Court's ruling on its ultimate admissibility.

**XI.     The Trial Should be Bifurcated, and Evidence Concerning Dorel's Assets Should be Excluded Unless and Until Plaintiffs Demonstrate Liability.**

The Court may order a separate trial of any separate issue in order to avoid prejudice to a party.  Fed. R. Civ. P. 42(b).  In this diversity case, the Court should exercise its discretion under Rule 42(b) to implement the public policy of the State of Texas as expressed in Tex. Civ. Prac. & Rem. Code § 41.009 and *Transportation Insurance Co. v. Moriel*, 879 S.W.2d 10, 30 (Tex. 1994) (recognizing that evidence of a defendant's financial information or profits has a high potential for prejudicing the jury's determination of other disputed issues and requiring bifurcated trials in punitive damage cases).

The Court of Appeals for the Fifth Circuit has expressed approval of this procedure.  For example, in *Industrias Macon v. Bacchus Industries, Inc.*, No. 93–8209, 1994 WL 93356, at *2 (5th Cir. 1994) (per curiam), the court reversed an award of punitive damages and remanded for failure to "comport with the [Texas Supreme Court's] announced procedural guidelines or substantive criteria for imposition of punitive damages."  *See also Jenkins v. Raymark Indus.*, 782 F.2d 468, 473 (5th Cir. 1986) (approving bifurcation of liability and punitive damages in a class action); *In re Voluntary Purchasing Groups, Inc. Litigation*, No. Civ. 3:96–CV–1929–H, 2004 WL 86292, at *1–2 (N.D. Tex. Jan. 15, 2004) (finding *Moriel* instructive and bifurcating into a first trial on liability for actual damages and a second trial with the same jury to determine punitive damages); *Holland v. Harmon*, No. Civ. A. 3:97CV–0754D, 1999 WL 58226, at *1 (N.D. Tex. Jan. 29, 1999) (indicating a willingness to bifurcate when only Texas-law claims

were at issue, but denying a motion to bifurcate because of the remaining federal claims); *Allied Serv. Corp. v. WG Warranty & Ins. Serv.*, No. Civ. A 3:93–CV–0411, 1996 WL 33417524, at *1 (N.D. Tex. Mar. 7, 1996) (bifurcating the issue of punitive damages and indicating that *Moriel*'s reasoning for doing so is sound); *State Farm Fire & Cas. Co. v. Woods*, 896 F. Supp. 658, 659-60 (E.D. Tex. 1995) (granting a motion to bifurcate the issue of punitive damages regardless of whether it was a matter of substantive or procedural law).

Dorel believes that this case should be subject to two phases as provided in Tex. Civ. Prac. & Rem. Code § 41.009.   Accordingly, Dorel respectfully requests that the Court grant its motion to bifurcate, enter an order providing that the issue of the amount of exemplary damages will be the subject of a separate trial, if such is necessary, and exclude any evidence of the wealth or poverty of the parties during the liability phase.

## XII.   Evidence or Argument Concerning Medical Bills for Amounts Other than Those Paid by Medicaid Should be Excluded.

Plaintiffs should be precluded from offering any evidence or testimony regarding unadjusted medical expenses.   Under Texas law, a plaintiff's recovery is limited to "the amount actually paid or incurred."  Tex. Civ. Prac. & Rem. Code Ann. § 41.0105 (West).  "Actually paid or incurred" means the amount paid or owed after a provider has adjusted the bill for credits, discounts or reduced rates.  *Metro. Transit Auth. v. McChristian*, 449 S.W.3d 846, 852 (Tex. App.—Houston [14th Dist.] 2014, no pet.).   Evidence of unadjusted bills is inadmissible at trial. *Henderson v. Spann*, 367

S.W.3d 301, 304 (Tex. App.—Amarillo 2012, pet. denied).

In this case, Medicaid paid many of C.H.'s medical bills at reduced rates and then reduced the amount it charged Plaintiffs even further for settlement purposes. Plaintiffs therefore cannot recover beyond the amount that Medicaid charged them. Tex. Civ. Prac. & Rem. Code Ann. § 41.0105.  Only the amount that Plaintiffs paid for C.H.'s medical treatment is admissible at trial, and this Court should exclude any evidence of C.H.'s unadjusted medical expenses.  *Henderson*, 367 S.W.3d at 304.

**XIII.  Evidence or Argument Concerning C.H.'s Alleged Brain Injury Should be Excluded.**

Because the admissibility of C.H.'s alleged brain injury has yet to be determined by the Court, there should be no reference to it in jury selection.  Further, for the reasons set out in Defendant's Motions to Exclude Plaintiffs' Experts' opinions on this issue, no evidence or testimony of this alleged injury should be admitted during the trial.

Respectfully submitted,


/s/ Jonathan Judge
Anthony A. Avey (Attorney-in-Charge)
AVEY & ASSOCIATES, PLLC
Texas State Bar No. 00790250
14255 Blanco Road
San Antonio, Texas 78216
Telephone: (210) 308-6600
Facsimile: (210) 308-6939
tavey@aveylaw.com

Jonathan Judge (pro hac vice)
Matthew G. Schiltz (pro hac vice)
SCHIFF HARDIN LLP
233 S. Wacker Drive, Suite 6600
Chicago, Illinois 60606
Telephone: (312) 258-5500
Facsimile: (312) 258-5600
jjudge@schiffhardin.com
mschiltz@schiffhardin.com

**ATTORNEYS FOR DEFENDANT
DOREL JUVENILE GROUP, INC.**

**<u>CERTIFICATE OF CONFERENCE</u>**

The parties have conferred by telephone and were unwilling to reach agreement on motions in limine.  The parties will continue to work to resolve their differences.

s/ Jonathan Judge

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that I caused the foregoing to be filed on May 27, 2016, with the Clerk of Court using the CM/ECF System, which will automatically send e-mail notification of such filing and a link to a copy of the document to all attorneys of record.

/s/ Jonathan Judge
Jonathan Judge