UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| NICOLE HINSON, Individually and as Next Friend of C.H., a Minor; Texas residents,<br><br>       Plaintiffs<br><br>v.<br><br>DOREL JUVENILE GROUP, INC., a Massachusetts corporation<br><br>       Defendant. | §<br>§<br>§<br>§<br>§   Cause No. 2:15-cv-713-JRG-RSP<br>§<br>§<br>§   Jury Demand<br>§<br>§<br>§ |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTIONS IN LIMINE

Nicole Hinson, Individually and as Next Friend of C.H., a Minor, object as follows to Defendant's proposed Motions in Limine

**I.    Evidence or Argument Concerning Filing A Motion in Limine on Any Topic**

Agreed.

**II.   Evidence or Argument Concerning the Insurance Industry**

Agreed.

**III.  Evidence or Argument Concerning Plaintiffs' Possible Taxation**

Agreed.

**IV.   Evidence or Argument Concerning Literature Not
        Discussing Thoracic Spinal Cord Injuries**

As addressed extensively in the parties' briefing concerning Dorel's Motion for Summary Judgment based largely on the same arguments, the evidence concerning Dorel's knowledge of the risks of spinal cord injuries is admissible and highly relevant. Dorel itself noted the importance of a rear-facing orientation to provide support for the head, neck, back, and pelvis.

The thoracic region of the spine is in the mid-back and is exactly the area that the literature concerning enhanced protection for toddlers is addressing. Even Dorel's own expert has conceded that given the prevalence of loose shoulder harnesses on toddlers, combined with the risk a child squiggles his way out of the shoulder harness or pushes down the chest clip, raises the prospect of thoracic injuries when in a forward-facing seat in a frontal collision. Again, these are exactly the risks that are noted in the literature that can be avoided by a rear-facing orientation.

The mere fact that many of the articles reference the size of a child's head and risk of neck injury as specific examples of possible injury modes does not make them inadmissible. If anything, such an attack goes to the weight that should be afforded such evidence, and not its admissibility. Dorel's counsel can and surely will cross-examine any witness about the focus of any literature and its purported inapplicability to C.H.'s injuries.

**V.      Evidence Concerning EMS's Transfer of C.H. to E.R. in a Rear-Facing Position**

Plaintiff does not intend to make any argument of any significance concerning the mere fact that the EMTs buckled C.H.'s seat in a rear-facing direction. However, it is part of the medical records and was an elicited portion of the EMT's testimony describing the transport of C.H. to the hospital.  To exclude this evidence as a simple fact of his transport would not serve any legitimate purpose.

**VI.     Evidence or Argument Concerning Discovery Conduct**

Plaintiff does not intend to make any reference to discovery conduct or abuse generally. However, the materials that were produced and the witnesses that were designated to respond to Rule 30(b)(6) notices, including the extent of their knowledge on the designated topics, is fair

game for examination. To the extent this motion would prevent such a line of cross-examination or questioning, it should be denied.

**VII.    Evidence Concerning Counsel's Compensation and Office Location**

Agreed.

**VIII.   Evidence or Argument Concerning Dorel's Profit Margins or Marketing Motives**

Dorel's own executives have testified in this case that the reason the warnings for existing products would not be updated to reflect the two-year forward-facing minimum age was because management made the decision to not spend the "resources." These same witnesses cited the dwindling sales of the subject model seat and its soon-to-be-phased-out status as reasons it did not make business sense to spend money to update its warnings. That is the evidence in this case. If these marketing practices are "nefarious," then that is simply a fact of this case. A Motion in Limine cannot be granted simply to eliminate such highly relevant facts from the jury's consideration.

**IX.     Evidence Concerning the Impact of C.H.'s Injuries on the Hinson Family**

The effect of C.H.'s injuries on his family and the necessities of his care are highly relevant and go to the heart of the jury's consideration of his future damages. To understand what is involved in caring for C.H. in the future without any context provided by his current care-givers would force the jury to evaluate his damages in a vacuum. The jury should hear and understand C.H.'s daily routine, the impact of his injuries on his future schooling plans, the needs for his care and time commitment involved, and other similar matters that are extremely relevant to this case. This Motion is another Dorel attempt to simply exclude any evidence that might be hurtful to its mission to defeat C.H.'s claims without any valid evidentiary basis.

### X. In-Court Demonstratives Without Prior Presentation

This Court has an established process recently discussed in chambers concerning the exchange of non-impeachment demonstratives the night before and for raising any related issues with the Court. This limine should be denied because it would undermine the Court's previously stated plan and would apply to impeachment demonstratives.

### XI. Bifurcation of Trial

This Court set a deadline for filing Motions for Affirmative Relief. Dorel did not timely file any Motion to Bifurcate. Therefore, Plaintiff objects to the urging of a Motion to Bifurcate within a Motion in Limine. Moreover, a single trial phase addressing every issue in this case would be most efficient, and would permit the presentation of all necessary evidence during a single evidentiary phase of the trial.

### XII. Evidence of Medical Bill Amounts Other Than Those Paid by Medicaid

Plaintiff does not dispute that Chapter 41 restricts evidence of medical bills to only those that were paid, or are owed. Medicaid, acting as a form of insurance for C.H., paid a negotiated rate for his medical care. While Plaintiff objects to the entire scheme of Chapter 41's paid/incurred approach as being unconstitutional, it is the current substantive law in Texas. As such, the medical bills submitted should reflect the paid or owed amount. However, Dorel wants much more than that. C.H.'s counsel was able to negotiate with Medicaid to reduce the amount that C.H. had to pay back to Medicaid for some of these bills pursuant to statutory subrogation rights that Medicaid enjoys. Dorel seeks to have the jury only hear the negotiated amount paid to Medicaid pursuant to Medicaid's subrogation rights. This approach would take Chapter 41 a step further than its already broad reach and go beyond the express language in the statute. The amounts paid to C.H.'s medical providers or any amounts still owed, is the evidence the jury

should hear pursuant to Chapter 41. In fact, Medicaid in theory still has the legal subrogation rights to recover the full amount paid on C.H.'s behalf.

## XIII. Evidence Concerning C.H.'s Brain Injury

This Motion in Limine simply re-hashes the same legal and evidentiary arguments already fully briefed and before the Court in various *Daubert* motions. C.H. has been evaluated by a Board Certified Neuropsychologist and a Board Certified Neurologist, and has tested positive for neurological deficits consistent with a brain injury. C.H. has not experienced any event that would cause such a condition beyond the head impact and spinal cord injury suffered in the subject incident. The jury must consider C.H.'s brain injury in order to fully evaluate his future care needs and damages.

## XIV. Evidence of Improperly Disclosed Treating Physicians

Plaintiff does not intend to call to trial C.H.'s treating physicians beyond those whose deposition testimony has been made available and designated by all parties.

## XV. Evidence from Undisclosed Experts

Plaintiff does not intend to offer testimony from any undisclosed expert. Plaintiff's primary experts were provided along with Dorel's expert's depositions and reports after their own depositions and late in the course of the preparation of this case for trial. Plaintiff may ask his experts to respond to criticisms and to address opposing opinions. Neither Rule 26 nor this Court's Order contemplates that there will be a never-ending back and forth of expert reports providing responses to each side's criticisms or testimony. Plaintiff fully complied with Rule 26 and this Court's Orders. The offering of any response to Dorel's experts' criticisms or positions will only be a brief portion of examination of Plaintiff's experts, but must be permitted. These

responses do not consist of any new opinions, but are simply responding to certain questions and defending positions previously disclosed.

## XVI. Evidence of What Dorel Did or Knew After C.H.'s Summit Seat was Manufactured

In its sweeping Motion in Limine, Dorel seeks to prevent the jury from hearing a vast amount of relevant evidence in this case. Rule 407 is totally inapplicable and Dorel's reliance on this rule is entirely misplaced. Dorel still sells the Safety 1st Summit seat without any warning to parents that their toddler would be much safer in a convertible rear-facing car seat before age 2. There has been no remedial measure of any kind taken with respect to the Safety 1st Summit seat. Dorel has not taken any "measures that would have made an earlier injury or harm less likely to occur" because it hasn't changed the warnings with the subject seat in any manner. Thus, Rule 407 has no application. C.H. would have the same claims he is asserting here if he had bought a Safety 1st Summit car seat made last week.

Dorel's various executives have testified that the reason the warnings have not changed on the Safety 1st Summit car seat is because they did not want to spend the resources, and because they believe the seat is safe for toddlers younger than 2 years old. The fact that Dorel has changed its warnings on other similar products that have been newly introduced to warn parents that their toddler under 2 years of age is not safe forward-facing is highly relevant and admissible for impeachment purposes, as well as to evidence Dorel's inconsistent position so that the jury can evaluate its credibility. If Dorel truly believes that toddlers younger than 2 years of age are safe forward-facing, then why is it cautioning parents that serious injury or death can occur in other seats that position a toddler forward-facing. This question goes to the heart of this case and weighing the credibility of Dorel's litigation-acquired position that toddlers are safe forward-facing before age 2.

## XVII. Evidence of Other Defects, Products, Fines, Recalls, and Settlements

Dorel will tout the importance of compliance with NHTSA's minimum standard FMVSS 213, as insuring that a seat is safe for a child. Every recalled child safety seat in the last 30 years also complied with this same minimum standard, and yet had a serious safety defect of one type or another. It is a fair area of discussion to point out the limits of the NHTSA's ability to regulate car seat issues and the significance of compliance with the minimum federal standard.

## XVIII. Evidence of the Absence of Known Similar Incidents

Dorel should not be permitted to make sweeping assertions concerning the lack of any injury similar to C.H., without first approaching the Court outside the presence of the jury. Any such statements are not relevant to the issues in this case and lack any proper foundation. The truth is that Dorel has no accurate method to catalog child injures in its seats. In fact, Dorel would have no idea of C.H.'s injuries if this lawsuit had not been filed.

## XIX. Evidence of Prior Settlement With Wal-Mart Stores, Inc.

The sole justifiable reason to interject the earlier lawsuit against Wal-Mart into this case is to supposedly impeach Plaintiff's experts. Given the possible prejudice that could result from the introduction of this issue, it is reasonable to ask Dorel's counsel to first address the Court outside the presence of the jury if he believes any impeachment opportunity has presented itself. In addition, it is totally unnecessary to divulge any lawsuit or settlement against Wal-Mart to impeach the testimony of any expert. Dorel's counsel can simply reference an earlier report by date and proceed to conduct any purported impeachment examination of the witness. To interject the lawsuit against Wal-Mart or any settlement would be highly prejudicial and is not relevant to any fact issue in this case.

## XX.     Michelle Hoffman's Usage of Sled Tests

Michelle Hoffman is a bio-mechanic who will address C.H.'s occupant kinematics or movement during the subject crash. Ms. Hoffman may use a Dorel-produced test involving the Safety 1st Summit seat and an anthropomorphic dummy to simply illustrate the movements and forces acting on a toddler during a frontal collision if they are in a forward-facing car seat. To the extent there is any attack available to Dorel on the use of such tests to illustrate these issues, counsel is free to cross-examine the witness. However, any such issues would go to the weight to be afforded such testimony, and not its admissibility. Ms. Hoffman has disclosed her opinions in conformance with Rule 26 and the use of any such tests is not a foundation for her opinions, but merely a demonstrative aid to illustrate those opinions for the jury.

Respectfully submitted,

/s/Jeffrey T. Embry
Jeffery T. Embry
State Bar No. 24002052
Attorney-in-Charge
George Cowden IV
State Bar No. 24071492
Kyna J. Adams
State Bar No. 24041792
Hossley & Embry, LLP
320 South Broadway Avenue, Suite 100
Tyler, Texas 75702
Ph. (903) 526-1772
Fax (903) 526-1773
jeff@hossleyembry.com
george@hossleyembry.com
kyna@hossleyembry.com

**ATTORNEYS FOR PLAINTIFF**

## **CERTIFICATE OF SERVICE**

    The undersigned counsel hereby certifies that a true and correct copy of this Motion was served on counsel for defendant via electronic means on this June 6, 2016.

                                        /s/Jeffrey T. Embry
                                        Jeffery T. Embry