UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| NICOLE HINSON, Individually and as Next Friend of C.H., a Minor, Texas residents, <br><br> Plaintiffs <br> v. <br> DOREL JUVENILE GROUP, INC., a Massachusetts corporation, <br><br> Defendant. | Case No. 2:15-cv-00713 |

**DEFENDANT DOREL JUVENILE GROUP, INC.'S
REPONSE TO PLAINTIFFS' MOTION *IN LIMINE***

TO THE HONORABLE UNITED STATES DISTRICT COURT:

COMES NOW Defendant Dorel Juvenile Group, Inc. ("Dorel"), by counsel, who submits this response to Plaintiffs' Motion *in Limine*.

1. **Trust Fund, Healthcare Savings Account, or Health Insurance**

Dorel refers the Court and Plaintiffs to its own Motion *in Limine* XIX on this issue. Dorel should be allowed to impeach Plaintiffs' experts' change in testimony with the fact of Plaintiffs' prior settlement.

2. **Prior Claims or Settlements**

Plaintiffs' motion numbers 2, 4 and 13 also concern the Plaintiffs' prior claims and lawsuit against Wal-Mart and the adverse driver, Stacey Tilley. As set forth above and in Dorel's Motion *in Limine* XIX, Dorel should be permitted to use the fact of Plaintiffs' prior settlement for impeachment.

Plaintiffs also cannot prevent the Defendant from properly using any of

Plaintiff's previously filed and/or abandoned pleadings. It has long been held and indeed is the general rule, that a party's previous or amended pleadings are admissible as evidentiary admissions. *Continental Ins. Co. of N.Y. v. Sherman*, 439 F.2d 1294, 1298 (5th Cir. 1971); *White v. ARCO/Polymers, Inc.*, 720 F.2d 1391, 1396 n.5 (5th Cir. 1983). *Google Inc. v. Beneficial Innovations, Inc.*, Civil Action 2:11-cv-00229-JRG-RSP (E.D. Tex. Aug. 22, 2014). Dorel intends to use previous pleadings as an evidentiary admission, either as a prior inconsistent statement or an admission. Fed. R. Evid. 613; Fed. R. Evid. 801(d)(2). If Plaintiff testifies inconsistently with any of her previously filed pleadings, Dorel should be permitted to cross-examine her with those documents.

**3.   Alleged Liability of Deborah Williams**

In response to this motion, Dorel references and fully incorporates herein its Response to Plaintiffs' Motion to Strike Responsible Third Parties (Doc. No. 91).

**4.   Substance of Plaintiffs' Prior Pleadings**

Please see response to Topics 1 and 2 above.

**5.   Deep Pockets**

Agreed

**6.   Circumstances Surrounding Employment of Plaintiffs' Counsel**

Defendant may question Plaintiff and Plaintiffs' experts about when they first contacted counsel or were first retained by counsel, in relation to when the lawsuit was brought against Dorel. This is relevant information as to the beliefs of these witnesses as to the merits and priority of a claim against Dorel.

**7. Comments About Plaintiffs' Counsel**

Agreed

**8. Comments About Plaintiffs' Witnesses or Experts**

Dorel should be permitted to characterize Plaintiffs' witnesses and experts in any way reasonably inferred from the evidence and testimony introduced at trial.

**9. Acts or Omissions of Deborah Williams**

In response to this motion, Dorel references and fully incorporates herein its Response to Plaintiffs' Motion to Strike Responsible Third Parties (Doc. No. 91).

**10. Acts or Omissions of Trinity Mother Frances and/or its Staff**

Dorel agrees that it will not argue that Trinity Mother Frances or its staff should be treated as a responsible third party. However, Dorel reserves all rights to introduce evidence concerning C.H.'s medical care at Trinity Mother Frances.

**11. Inferences Regarding C.H.'s Discharge from Baylor**

Dorel agrees not to argue that the discharge from Baylor itself exacerbated C.H.'s injuries or medical outcomes, but reserves its right to introduce evidence of the facts and circumstances surrounding that occurrence.

**12. Requested Examination of C.H.**

If Plaintiffs criticize Defendant's experts for not examining C.H., as they did in the Wal-Mart lawsuit, Dorel's experts should be able to respond that they requested such an examination but Plaintiffs objected. Specific references to the Motion to Examine or the Court's Ruling need not be referenced, so the jury will not be confused

**13. Prior Case Involving Wal-Mart and Stacy Tilley**

Please see response to Topics 1 and 2 above.

**14.     Expert Reports in Prior Litigation**

Like prior pleadings, prior expert reports may be used to impeach the Plaintiff or Plaintiff's experts either as a prior inconsistent statement or an admission. Fed. R. Evid. 613; Fed. R. Evid. 801(d)(2). If Plaintiff or her experts/agents testify inconsistently with any of the previously disclosed expert reports, Dorel should be permitted to cross-examine them with those documents.

**15.     Opinions of Bill Hagerty**

Defendant designated the video deposition testimony of Bill Hagerty, Plaintiffs' tire expert in the Wal-Mart case. Wal-Mart is a "settling person" under Texas law, and should be submitted on the verdict form. Tex. Civ. Prac. & Rem. Code § 33.003(a). Dorel is required to support this submission with evidence, such as the testimony of Plaintiffs' tire expert. Id. at (b). This evidence is admissible under both Fed. R. Civ. P 32(a) and Fed. R. Evid. 804(b)(1).

Because Plaintiffs were represented in the prior deposition and the Haggerty testimony would be admissible if here were present, the only issue is whether "the use is allowed by Rule 32(a)(2) through (5). Rule 32(a)(1). Mr. Haggerty lives in Escondido, California more than 100 miles from Marshall, Texas. Rule 32(a)(4)(B). That alone allows Dorel to play this testimony. *Battle v Memorial Hospital Gulfport,* 228 F.3d 544, 554 (5th Cir. 2000) Further, Rule 32(a)(8) also permits the testimony. This case involves same subject matter and parties for purposes of this rule. *See Vedros v. Northrop Grumman,* Civil Action No 11-1195 (E.D. La June 2015) (noting identical defendants not

required); *See also Runge v. Stanley Fastening Sys.*, (S.D. Ind. Dec. 23, 2011) ("same party" rule liberally construed so that "many cases have held that a deposition can be offered against one who was a party in the former suit even though the party now using deposition" *citing Wright, Miller & Marcus*, Fed. Prac. and Proc. § 2150).

The *Powertrain* decision cited by Plaintiffs is distinguishable from the instant situation. There, the two lawsuits involved different claims (trademark infringement and EPA violations and civil penalties for importing engines). In the prior case, the opponents had been aligned unlike the latter case. Thus, that Court concluded the prior deposition did not involve the same "subject matter between the same parties." Here, the two lawsuits involve the same subject matter – the cause of C.H.'s injuries. Further, Dorel (and Wal-Mart) were never aligned with Plaintiffs on this issue. In fact, the deposition of Bill Haggerty was taken by Wal-Mart's counsel, so there is ample cross-examination material for Plaintiffs to choose from should they wish to impeach their prior expert. Finally, the trial court in *Powertrain* specifically left open the possibility of using the testimony for impeachment purposes. *See Powertrain*, 88 F. Supp. At 68. Thus, like prior pleadings and expert reports, Dorel should be able to impeach Plaintiff and her experts if they testify inconsistently with Bill Haggerty's testimony. Fed. R. Civ. P. 32(a)(2).

16. **Overall Safety Record of the Subject Car Seat**

The *sine qua non* of a failure to warn case is the presence or absence of prior incidents that would have or have not put the Defendant on notice of the claimed risks. In its motion to allow evidence of such references, Defendant in its Motion in Limine

No. 13 cited both Texas and Fifth Circuit authority that make clear the relevance of such evidence in showing the (lack of) foreseeability of Plaintiffs' claimed harm. *E.g., Cain v. George*, 411 F.2d 572, 573 (5th Cir. 1969) (absence of known prior incidents relevant to show lack of notice); *Nissan Motor Co. Ltd. v. Armstrong*, 145 S.W.3d 131, 139 (Tex. 2004). Defendant incorporates that motion here.

In their motion, Plaintiffs cite no case authority. Plaintiffs cannot simultaneously argue Dorel should have been aware of *theoretical* risks while denying Dorel the opportunity to respond that these risks have never previously come to fruition, as far as anyone knows (including Dorel). The Summit's known safety record tends to make the claims of Plaintiffs' experts less likely to be true, and is thus relevant and admissible.

**17.     Alleged Spoliation**

This lawsuit concerns the allegedly-deficient performance of a Summit child car seat that was seat-belted into Plaintiffs' vehicle. Plaintiff Nicole Hinson insists that she buckled the car seat in tightly to the vehicle, and that she understood installing the car seat properly was important to her child's safety. Plaintiffs did not maintain possession of their vehicle after the crash, but counsel for Plaintiffs later located Plaintiffs' pickup truck in a California junkyard, and retained an expert to download various data from the vehicle's "black box." Plaintiffs did not take any actions to preserve the vehicle itself. The vehicle, as well as the seat belts allegedly used to restrain C.H. and his Summit car seat, have since been lost and presumably destroyed.

"Spoliation is the destruction or the significant and meaningful alteration of evidence." *Rimkus Consulting Group, Inc. v. Cammarata*, 688 F. Supp. 2d 598, 612 (S.D.

Tex. 2010). Spoliation is an evidentiary issue that is controlled by federal law. *Montemayor v. Heartland Transportation, Inc.*, CIV. A. B-07-CV-151, 2008 WL 4777004 at *7 (S.D. Tex. Oct. 30, 2008). The Northern District of Texas has defined the proper goals of a spoliation sanction:

> [A]n appropriate sanction should "(1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore 'the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party.' " *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir.1999) (quoting *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir.1998)); *Victor Stanley*, 269 F.R.D. at 533–34.

*Ashton v. Knight Transportation, Inc.*, 772 F. Supp. 2d 772, 801 (N.D. Tex. 2011).

The Southern District has also expressed three purposes of a spoliation sanction using slightly different language: "(1) to punish the spoliator for destroying relevant evidence; (2) to deter future spoliators; and (3) ***perhaps most important***, to serve an evidentiary function by allowing courts to use sanctions or submit a ***presumption that levels the evidentiary playing field*** and compensates the nonspoliating party." *In re Enron Corp. Sec., Derivative & Erisa Litig.*, 762 F. Supp. 2d 942, 964 (S.D. Tex. 2010) (citing *Trevino v. Ortega*, 969 S.W.2d 950, 953-961) (Tex. 1998) (internal quotes omitted; emphasis added). Under appropriate circumstances, a court may instruct the jury that intentional spoliation of evidence raises "an adverse presumption that the evidence would have been unfavorable to the spoliating party." *Trevino*, 969 S.W.2d at 960-961; *see also Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995); *H.E. Butt Grocery Co. v. Bruner*, 530 S.W.2d 340, 344 (Tex. Civ. App.–Waco 1975).

Dorel and its experts have been prejudiced by Plaintiffs' spoliation of relevant evidence. Plaintiffs plan to offer testimony to the jury at trial that they installed the Summit child seat into the vehicle seat belt in accordance with its instructions, but by their spoliation of evidence, have ensured that Dorel has no way of fairly testing or cross-examining that testimony in any meaningful way. Indeed, Dorel's expert William Van Arsdell, Ph.D., P.E., will explain at trial that because Plaintiffs allowed their vehicle to be lost, it was impossible for him to verify if Nicole Hinson in fact did buckle the Summit child car seat in properly as she no doubt plans to tell the jury she did. ( Van Arsdell Rpt. p. 15, Ex. C.) Dorel has been deprived of the evidence it needed to meaningfully cross-examine Nicole Hinson and verify whether her testimony on this topic is true.

Dorel therefore requests that the Court deny Plaintiffs' motion regarding spoliation, and consider an appropriate spoliation instruction at the close of the trial.

**18.    Testing After Discovery Deadline**

Agreed

**19.    Outcome of Other Cases Involving Gary Whitman**

Agreed

**20.    Untimely Disclosed Opinions of Lisa Gwin**

Plaintiffs' biomechanical expert, Michelle Hoffman, shifted her opinions between the time of her report (February 4, 2016) and her deposition testimony (given on March 18, 2016). In her report, Ms. Hoffman concluded that C.H. would not have been injured had he been restrained **properly** in his car seat:

> In conclusion, if [C.H.] had been *properly restrained* in his child safety seat in a rear-facing configuration at the time of the subject accident, he would not have sustained his SCIWORA injury at T12 nor would he have sustained a catastrophic cervical spine injury.

(Hoffman Rpt. p. 11, Ex. A) (emphasis added).

In their expert reports, released on March 11, 2016, Dorel's experts found that C.H. was not using the shoulder straps at the time of the crash and that this misuse of the seat was the primary cause of his injuries, not being forward- or rear-facing.

In her deposition, which Plaintiffs' counsel had insisted occur only after Dorel's experts had issued their reports, Ms. Hoffman decided to offer the new opinion that C.H. may have slipped out the harness of his shoulder straps during the crash. She admitted this opinion was nowhere in her report. (Hoffman Dep. pp. 53–54, Ex. B.) She then went further and opined that C.H. would have been protected rear-facing even had he not been properly restrained. *Id.*

In response to Ms. Hoffman offering this new opinion for the first time at her deposition, Dr. Gwin responded in her own deposition that she disagreed and felt that being improperly-restrained rear-facing raised a host of new and important safety risks. If Ms. Hoffman is allowed to offer new opinions in her deposition, Dr. Gwin is certainly allowed to rebut those opinions in her testimony, particularly since, as Dr. Gwin explained, a child with no shoulder strap restraint is at risk of a completely different set of injuries than one who has shoulder straps on. Dr. Gwin's additional opinions were limited to a rebuttal of Ms. Hoffman's new opinions.

The simplest solution to this problem would be to bar Ms. Hoffman from

offering any opinions beyond those in her report, given that her report is the place where those opinions belong. But if the Court is going to allow Ms. Hoffman to offer brand new opinions at Ms. Hoffman's deposition, then it must allow Dr. Gwin to respond to those new opinions at Dr. Gwin's deposition.

**21.    Opinions of Jeya Padmanaban**

Plaintiffs' case relies heavily on a study by Henary et al that claims children are substantially safer rear-facing than forward-facing between one and two years of age. Defense expert Jeya Padmanaban concluded that Henary et al were mistaken and that the available accident data suggested that being forward-facing was safer than rear-facing. At her deposition, Ms. Padmanaban testified that she viewed her study as showing more than Henary et al were wrong about the data than supporting a definitive safety opinion on forward versus rearward-facing in car seats. Plaintiffs now claim these two positions are inconsistent.

That is not true. The point of Ms. Padmanaban's study is that Plaintiffs' most important supporting evidence is wrong. The available accident data does show, to a statistically significant degree, that forward-facing seats are associated with less severe injuries than rear-facing seats. Ms. Padmanaban may testify to that fact — which is a statistical opinion, the reliability of which Plaintiffs do not challenge — without offering an overall engineering opinion on which type of car seat is actually safer. Plaintiffs cannot rely upon a flawed study and then deny Defendant's expert the right to point out why the study is wrong.

**22.    Drafts of Expert Reports**

Dorel agrees that draft expert reports are ordinarily protected from disclosure in discovery, Fed. R. Civ. 26(b)(4)(B) – provided, of course that they are actually withheld from production. Here, Plaintiffs voluntarily produced a draft report of Dr. Joyce during discovery several months ago, and cannot now be heard, on the eve of trial, to suddenly change their mind. *See Shields v. Sturm, Ruger & Co.*, 864 F.2d 379, 382 (5th Cir. 1989). That is particularly true when, as is the case here, that Dr. Joyce's draft was shared with another expert (Amy MacKenzie) who spoke to him about it and persuaded him to change his opinion and issue a different expert report.

**23.    Failure of Hinson Family to Use Tether**

Plaintiffs contend that the Hinsons' failure to use the car seat's tether is irrelevant because Defendant's experts do not blame the non-usage for C.H.'s injury. That is not, however, the primary reason why Defendant will offer this very pertinent evidence.

Plaintiffs are contending in this case that Defendant gave improper instructions about how to safely use the Summit car seat, and that had Defendant given different instructions that Plaintiffs would have followed them. Under Texas law, the proper way to rebut this assertion is to show that Plaintiffs failed to comply with instructions that Defendant did provide on other issues. *See General Motors Corp. v. Saenz*, 873 S.W.2d 353, 357 ("Plaintiff admitted that he had not read the label on the can before using it. We held that the jury was free to conclude from this admission that plaintiff would not have read the label if it had contained the additional warning.") (citing *Technical Chemical Co. v. Jacobs*, 480 S.W.2d 602, 606 (Tex. 1972)).

Here, Mrs. Hinson admitted that the instructions told her to use the tether with

the Summit, and that failure to do so would risk serious injury or death to her child. Nonetheless, Mrs. Hinson did not follow that instruction. This evidence is not only admissible, but is appropriate to refute any otherwise-existing presumption that Mrs. Hinson would have followed different instructions given by Defendant.

Moreover, Plaintiffs also are complaining that the motion of the Summit and its dummy occupants are too violent. When the tether is employed, the Summit is more directly attached to the vehicle and the child and car seat have less movement. Plaintiffs cannot complain about the seemingly-violent kinematics in test videos while denying Defendant the opportunity to point out that, had Mrs. Hinson simply followed the instructions provided, the seat would have moved much less during the crash.

**24.    Any Allegation that Cameron Hinson was Speeding**

Agreed

**25.    Circumstances Surrounding C.H.'s Birth**

Agreed

**26.    Statements that no Similar Injuries Exist**

Dorel directs the Court to its own Motion *in Limine* XVIII on this issue. Dorel should be permitted to introduce evidence of the absence of similar injuries to establish what it knew or should have known at the time the Hinsons' seat was manufactured.

**27.    Defendant's Expert Van Arsdell's Tests**

Lastly, Plaintiffs claim that defense expert Will Van Arsdell's sled tests should be excluded because Defendant "intend[s] to claim that these tests recreate what C.H. would have experienced in the subject accident." This is false.

Dr. Van Arsdell's tests were intended to replicate the general effect on children and evidence left behind when Summit car seats are used properly versus improperly under the forces of this accident. Here, the sled tests revealed that a properly-configured child occupant would leave behind a *damaged* shoulder harness bar under the forces of this crash whereas an improperly-configured child occupant (no shoulder straps) would leave behind an *undamaged* shoulder harness bar. C.H.'s shoulder harness bar is undamaged, providing clear evidence that he was not using the shoulder belts at the time of this crash. (Van Arsdell Rpt. pp. 8–9, 11–12, Ex. C.)

A Fifth Circuit panel has previously reviewed and approved of Dr. Van Arsdell's sled testing of child car seats to illustrate forensic scientific principles. *McCune v. Graco Children's Products, Inc.*, 495 Fed. App'x 535, 539 (5th Cir. 2012). Such tests are probative and reliable when they substantially recreate the forces of the accident, when the same child seat design as the one at issue is being tested, and when a child test dummy is used that is close in size to the child. *Id.* Plaintiffs do not dispute that Dr. Van Arsdell's sled tests substantially recreate the forces of this crash, and that Dr. Van Arsdell tested the Summit child car seat. It is undisputed that the three-year-old test dummy used by Dr. Van Arsdell is the closest representative occupant to C.H. Plaintiffs' own expert, Mr. Whitman, has run several sled tests with this test dummy in past cases.

Plaintiffs' criticisms about how the tests might otherwise have been run go to the weight of the tests, not their admissibility. Every test can always be re-run in a slightly different way. When an expert runs multiple tests in different configurations (as Dr. Van Arsdell did), it is clear to the jury that the expert is testing theories, not reenacting

the subject accident.  *McCune*, 495 Fed. Appx. at 51.

Plaintiffs also complain that certain evidence, including a chest clip, did not turn out exactly the same in the testing as it did in the subject crash.  But again, Van Arsdell is not claiming the sled tests precisely replicate the subject crash.  Rather, Van Arsdell uses the knowledge gained from his tests, combined with his inspection of the subject child seat and his knowledge of the engineering literature, to form the opinion that the Summit car seat works well when used properly and C.H. most likely was using it improperly. In the *McCune* case, the Fifth Circuit panel found that a similar approach taken by Van Arsdell was appropriate and reliable.  495 Fed. Appx. at 539–40.  In fact, the tests run by Van Arsdell in *McCune* also dealt with a child who, like C.H., jackknifed over a lap belt after improperly using their child car seat.  *Id.*

This evidence is as probative and reliable here as it was in *McCune*, and Plaintiffs' motion should be denied.

Respectfully submitted,


/s/ Jonathan Judge
Anthony A. Avey (Attorney-in-Charge)
AVEY & ASSOCIATES, PLLC
Texas State Bar No. 00790250
14255 Blanco Road
San Antonio, Texas 78216
Telephone: (210) 308-6600
Facsimile: (210) 308-6939
tavey@aveylaw.com

Jonathan Judge (pro hac vice)
Matthew G. Schiltz (pro hac vice)
SCHIFF HARDIN LLP
233 S. Wacker Drive, Suite 6600
Chicago, Illinois 60606
Telephone: (312) 258-5500
Facsimile: (312) 258-5600
jjudge@schiffhardin.com
mschiltz@schiffhardin.com

**ATTORNEYS FOR DEFENDANT
DOREL JUVENILE GROUP, INC.**


**CERTIFICATE OF SERVICE**

I hereby certify that I caused the foregoing to be filed with the Clerk of Court using the CM/ECF System on June 6, 2016, which will automatically send e-mail notification of such filing and a link to a copy of the document to all attorneys of record.


/s/ Jonathan Judge
Jonathan Judge