# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

NICOLE HINSON, Individually and as
Next Friend of C.H., a Minor,

   Plaintiffs,

v.

DOREL JUVENILE GROUP, INC.,

   Defendant.

Case No. 2:15-cv-713-JRG-RSP

## **MEMORANDUM ORDER**

Pending before the Court are the following Motions filed by Defendant Dorel Juvenile Group, Inc.:

- Dorel's Motion to Strike Supplemental Report of Dr. David J. Altman (Dkt. No. 44);

- Dorel's Motion to Exclude Testimony of Dr. Arthur Joyce (Dkt. No. 61);

- Dorel's Motion to Exclude Brain Injury Opinions of Dr. David J. Altman (Dkt. No. 64); and

- Dorel's Motion to Exclude Brain Injury Related Opinions of Dr. Amy Mackenzie, Dr. Ralph Scott and Dr. Rodney Isom (Dkt. No. 65).

Collectively these Motions seek to exclude expert opinions about a traumatic brain injury ("TBI") allegedly suffered by the minor plaintiff.

For the reasons set forth in this Order, the Motions are denied.

## I. LAW

### A. Rule 702

Rule 702 provides that an expert witness may offer opinion testimony if (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702.

"The inquiry envisioned by Rule 702 is . . . a flexible one," but, in *Daubert*, the Supreme Court held that the Rules also "assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579, 594, 597 (1993).

"The relevance prong [of *Daubert*] requires the proponent [of the expert testimony] to demonstrate that the expert's 'reasoning or methodology can be properly applied to the facts in issue.'" *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (quoting *Curtis v. M & S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999)). "The reliability prong [of *Daubert*] mandates that expert opinion 'be grounded in the methods and procedures of science and . . . be more than unsupported speculation or subjective belief.'" *Johnson*, 685 F.3d at 459 (quoting *Curtis*, 174 F.3d at 668).

In assessing the "reliability" of an expert's opinion, the trial court may consider a list of factors including: "whether a theory or technique . . . can be (and has been) tested," "whether the theory or technique has been subjected to peer review and publication," "the known or potential rate of error," "the existence and maintenance of standards," and "general acceptance" of a theory in the "relevant scientific community." *Daubert*, 509 U.S. at 593–94; *see also Kumho Tire Co.,*

*Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999) ("*Daubert* makes clear that the factors it mentions do *not* constitute a 'definitive checklist or test.'"); *U.S. v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

It is not proper to use Rule 702 as a vehicle to usurp the fact-finding role of the jury, nor is exclusion under Rule 702 an appropriate substitute for the Court's power to grant summary judgment or judgment as a matter of law when such relief is warranted:

> [R]espondent seems to us to be overly pessimistic about the capabilities of the jury and of the adversary system generally. Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence. Additionally, in the event the trial court concludes that the scintilla of evidence presented supporting a position is insufficient to allow a reasonable juror to conclude that the position more likely than not is true, the court remains free to direct a judgment, Fed. Rule Civ. Proc. 50(a), and likewise to grant summary judgment, Fed. Rule Civ. Proc. 56.

*Daubert*, 509 U.S. at 596. "The proponent need not prove to the judge that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable." *Johnson*, 685 F.3d at 459 (quoting *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc)).

**B. Timeliness**

A party must disclose the opinions of its experts "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). A party who fails to timely disclose bears the burden of proving that such failure is harmless. *See Heidtman v. County of El Paso*, 171 F.3d 1038, 1040 (5th Cir. Tex. 1999). The Court considers four factors to determine whether a Rule 26 violation is harmless: "(1) [the party's] explanation for its failure to disclose the evidence, (2) the importance of the evidence, (3) the potential prejudice to [the opposing party] in allowing the evidence, and (4) the availability of a continuance." *CQ, Inc. v. TXU Min. Co., L.P.*, 565 F.3d 268, 280 (5th Cir. 2009).

3

## II. ANALYSIS

### A. Motion to Strike Supplemental Report of Dr. Altman (Dkt. 44)

Dr. David Altman, M.D. is a medical expert for Plaintiffs. He timely served his opening expert report in this case February 5, 2016. (Dkt. No. 44-3; "Original Report"). In that Original Report, Dr. Altman states: "Impressions: . . . Acquired brain injury related to the MVA [motor vehicle accident] on 05/15/2013." *Id.* at 11. Dr. Altman provides approximately twelve pages of opinions relating to the traumatic brain injury, including a summary of Dr. Joyce's opinions that C.H.'s performance in neuropsychological tests is consistent with a TBI (*id.* at 7), a "general discussion" of the literature related to TBIs (*id.* at 11–17), and a projection of C.H.'s specific care needs related to the TBI (*id.* at 38–40).

On February 25, 2016 Defendant sent a letter to Plaintiff:

> Before this week it was my belief from reading your expert reports that Dr. Altman was solely relying on Dr. Joyce's report/opinions for his recommendations regarding treatment for C.H.'s alleged traumatic brain injury (TBI). However, after the depositions this week, that is not clear to me now. If Dr. Altman is going to give independent opinions/bases for a TBI diagnosis, I need to depose him and hereby request dates for that deposition.

(Dkt. No. 44-4). Plaintiff responded March 2, 2016:

> To follow up on your February 25th letter, I believe you will want to depose Dr. Altman, as he does have opinions regarding C.H.'s TBI. We are checking on available dates for the deposition and should have those soon. Also, Dr. Altman will provide a brief supplement to his report next week.

(Dkt. No. 44-5).

On March 9, 2016 Dr. Altman served a two-page supplemental report. (Dkt. No. 44-7; "Supplement"). The Supplement states that "[C.H.] most likely sustained an acquired brain injury as a result of the motor vehicle accident on 05/15/2013" and provides a list of specific evidence upon which Dr. Altman bases this opinion. *Id.* Defendant deposed Dr. Altman on March 11, 2016.

4

(Dkt. No. 44-8).

Defendant moves to strike the Supplement as late, arguing that the Supplement is the first disclosure of a new "affirmative opinion that C.H. suffered a brain injury in the May 15, 2013 accident" and that this new opinion "completely changes Dr. Altman's role in the case." (Dkt. No. 44 at 2).

Defendant's premise—that the Supplement discloses new opinions—is questionable. Defendant's position is based on the idea that Dr. Altman did not "affirmatively opine that C.H. suffered a brain injury" in his Original Report, but instead "relies on Dr. Joyce for the TBI opinion, and merely provides the possible medical outcomes of such a condition." (Dkt. No. 44 at 3). However, Dr. Altman also affirmatively opines in his Original Report that C.H. suffered an "[a]cquired brain injury related to the MVA."[1] (Dkt. No. 44-3 at 11). More to the point, by relying on Dr. Joyce's opinions Dr. Altman necessarily adopted them as his own; the distinction between relying on another expert's opinions versus expressing an "affirmative" opinion is largely without difference. The rules contemplate that experts will assess the validity of the opinions they rely on and adopt them as their own. *Cf. In re TMI Litig.*, 193 F.3d 613, 716 (3d Cir. 1999) (An expert's "failure to assess the validity of the opinions of the experts he relied upon together with his unblinking reliance on those experts' opinions, demonstrates that the methodology he used to formulate his opinion was flawed under *Daubert* as it was not calculated to produce reliable results."). Dr. Altman's supplement does not disclose a new opinion.

However, Dr. Altman's Supplement does disclose additional evidence supporting his previously-disclosed opinion that C.H. suffered a TBI as a result of the accident. Some of this evidence was disclosed in Dr. Altman's Original Report (*e.g.* Dr. Joyce's tests), but some of it was

---

[1] Dr. Altman described his Supplement as "a clarification of what had already been stated in my original report." (Dkt. No. 44-8 at 16:4–9).

5

not cited in his Original Report. To the extent this constitutes a disclosure of an untimely new opinion, the Court finds the late disclosure to be harmless. *See CQ*, 565 F.3d at 280.

*Explanation for the failure to timely disclose*—Plaintiff served the Supplement in response to a letter from Dorel requesting clarification whether "Dr. Altman is going to give independent opinions/bases for a TBI diagnosis" and requesting a deposition. The Supplement directly addressed Defendant's request. Plaintiffs also complied with Defendant's deposition notice, and Defendant questioned Dr. Altman about his TBI opinions at length. *See, e.g.* (Dkt. No. 44-8 at 10–28). In light of the limited nature of the additional disclosures in the Supplement, the Court finds this explanation satisfactory and finds that this factor favors allowing supplementation.

*Importance of the evidence*—as indicated by Defendant's motions to strike the TBI opinions in this case, the evidence contained in Dr. Altman's Supplement is important. Defendant concedes this point, representing that the evidence is "critically important" and "goes to the heart of the entire damages case for Plaintiffs." (Dkt. No. 44 at 6). Accordingly, this factor favors allowing supplementation. *See Betzel v. State Farm Lloyds*, 480 F.3d 704, 708 (5th Cir. 2007) (holding that importance disfavors exclusion of testimony).

*Potential prejudice to Defendant*—Defendant calls the prejudice it would suffer "enormous" and argues the "trial would need to be postponed for months," but Defendant fails to substantiate these objections. (Dkt. No. 44 at 6–7). Dr. Altman's Opening Report disclosed his opinion that C.H. suffered a TBI and his Supplement was served prior to both his deposition and the deadline for serving rebuttal reports. Defendant had the opportunity to test and rebut any new material in the supplemental report—Defendant's counsel questioned Dr. Altman about his Supplement in detail on a paragraph-by-paragraph basis. *See* (Dkt. No. 44-8 at 45:14–74:12). Defendant does not identify any specific opinion or piece of evidence in the Supplement that came

as a surprise. Indeed, most of the "new" evidence in the Supplement was previously disclosed and relied upon by Dr. Joyce to arrive at the same conclusions as Dr. Altman. *See, e.g.* (Dkt. No. 61-5 at 20) (noting evaluations by Smith, Bryan, and Bell). Accordingly, the Court does not find any significant prejudice. This factor weighs in favor of supplementation.

*Availability of a continuance*—a continuance is not available at this late stage of the case, and Defendant does not request one.

For the foregoing reasons, the Motion to Strike Supplemental Report of Dr. Altman (Dkt. No. 44) is **DENIED**.

### B. Motion to Exclude Testimony of Dr. Joyce (Dkt. 61)

Defendant moves to strike the expert testimony of Plaintiff's neuropsychologist Dr. Arthur Joyce under Rule 702 and *Daubert*. (Dkt. No. 61). Defendant asks the Court to exclude Dr. Joyce's opinions that C.H. suffered a traumatic brain injury because they are "unsupported" and "directly at odds with the evidence in this case." (*Id.* at 1). Specifically, Defendant argues: (1) Dr. Joyce's opinions contradict those of medical professionals who treated C.H. after the accident; (2) Dr. Joyce misapplied or misinterpreted diagnostic tests including the Pediatric Glasgow Coma Score (PGCS) and the Vineland test; (3) Dr. Joyce failed to consider the depositions of C.H.'s family members in forming his opinions; (4) Dr. Joyce ignored prior deposition testimony of Dr. Altman; and (5) Dr. Joyce failed to establish that C.H.'s symptoms were caused by the accident as opposed to other sources of trauma or mental illness.

Rule 702 and *Daubert* require the Court to assess whether an expert's opinions are relevant and reliable, not whether they are persuasive or correct. *See Johnson*, 685 F.3d at 459 ("The proponent need not prove to the judge that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable."). The *Daubert* opinion and its

progeny cite factors such as "falsifiability" "refutability" and "testability" as the hallmarks of the reliability inquiry. 509 U.S. at 593. Focusing on these types of criteria has the salutary effect of dissuading the Court from usurping the role of the factfinder who is ultimately charged with weighing the credibility of witnesses. *See id.* at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). If an opinion is falsifiable, testable, and conforms to the standards of the relevant scientific community, the opposing party has all the tools it needs to challenge and attempt to rebut that opinion at trial. When an opinion is opaque, conclusory, pseudoscientific, or contrary to law, the Court must act as gatekeeper and exclude it.

Defendant's first argument, that Dr. Joyce's opinions are contradicted by other medical professionals who treated C.H. shortly after the auto accident, goes to weight and not admissibility. In virtually every case, an expert's opinions will be contradicted by at least one other expert. It is the jury's task to weigh credibility and determine who to believe. Moreover, Defendant has not necessarily identified any contradictions. Defendant's argument is based on the fact that none of the physicians who treated C.H. after the accident diagnosed him with a brain injury. The absence of a diagnosis does not necessarily establish the absence of an injury, and Plaintiff argues that a hospitalist note at Baylor Medical suggests a psychological evaluation was never performed on C.H. *See* (Dkt. No. 78-7 at 2) (no box checked next to "Psych"). The diagnoses (or lack thereof) rendered by C.H.'s other physicians may provide a useful means to challenge Dr. Joyce's opinions at trial but they do not establish that his opinions are unreliable.

Second, Defendant argues Dr. Joyce misapplied the PGCS, which scores a patient's neurological status after an accident in terms of eye, verbal, and motor responses. (Dkt. No. 61 at 7). Dr. Joyce's report criticizes the EMT responders' use of an adult GCS on C.H. rather than a

pediatric GCS, and Dr. Joyce attempts to extrapolate a PGCS score from available data. *See* (Dkt. No. 61-5 at 3). Defendant likewise argues that Dr. Joyce failed to give proper weight to the Vineland Adaptive Behavior Scales, which is a test based on a "semi-structured" interview with the caregiver (C.H.'s mother). *See* (*Id.* at 10–11). Dr. Joyce's report identifies the tests he used, identifies the facts and data he relied upon, and shows the scores he arrived at in each category. Whether Dr. Joyce's conclusions are right or wrong they are eminently testable, falsifiable, and rely on accepted standards in the relevant field of expertise. Defendant has the information necessary to cross, rebut, and attempt to falsify Dr. Joyce's opinions; they are admissible.

Defendant contends Dr. Joyce should have considered the deposition testimony of C.H.'s mother, father, and grandmother. C.H.'s mother, for instance, reports that he is "smart"," "sharp," and likely to attend college. *See, e.g.* (Dkt. No. 61-9 at 104:19–105:3) (C.H. is described as both "smart" and "very hyperactive" with "some trouble focusing"). Although Dr. Joyce does not rely on the deposition testimony of C.H.'s family, he does rely on interviews he conducted with C.H.'s mother and grandmother. (Dkt. No. 61-5 at 2). Defendant does not explain why Dr. Joyce's opinions are rendered unreliable by a failure to rely on deposition testimony in addition to these interviews.

Defendant also identifies the deposition testimony of Dr. Altman in a prior case against Wal-Mart involving the same accident. Dr. Altman served an expert report in that case that listed a "[p]ossible acquired brain injury" among C.H.'s injuries but did not provide further detail on the subject. (Dkt. No. 44-1 at 8). In his subsequent deposition in the *Wal-Mart* case, Dr. Altman testified that C.H. "should be able to live a full and complete life." (Dkt. No. 61-10 at 62:25-63:1). Defendant contends this statement contradicts Dr. Joyce's subsequent diagnosis of a TBI. The contradiction is not apparent from the deposition, in which Dr. Altman also points out that he "did

not see that [C.H.] underwent any formal diagnostic testing for an acquired brain injury." (*Id.* at 35:22–24). Dr. Altman has apparently revised his views in light of Dr. Joyce's subsequent diagnostic testing, as evidenced by Dr. Altman's reports in the present litigation. *Daubert* does not inherently preclude an expert from changing his opinions. The scientific method could be described as the process of assiduously updating one's views in light of new evidence. To the extent Defendant identifies a contradiction, this is fertile ground for cross examination. And, as discussed *supra*, Rule 702 does not render an expert's opinions unreliable merely because they disagree with another expert's opinions.

Finally, Defendant argues Dr. Joyce cannot show a causal link between the recently-diagnosed TBI and the car accident. Defendant notes that no psychological or neurological evaluation was performed on C.H. before the accident and that C.H.'s symptoms could be attributable to other causes such as mental illness or subsequent trauma. Defendant contends "Dr. Joyce's tests of C.H. should be given less weight than the overwhelming objective, medical evidence that contradicts Dr. Joyce's opinions." (Dkt. No. 61 at 13). Defendant is correct that these issues go to <u>weight</u> and not admissibility. Dr. Joyce examined evidence of C.H.'s behaviors and symptoms at and near the time of the accident and concluded that these were consistent with TBI. *See, e.g.* (Dkt. No. 61-5 at 3–4) (estimating PGCS score at the time of accident; noting C.H. was "sleeping all the time, not walking, not moving, just staring at the TV" after the accident). Dr. Joyce also performed tests on C.H., the results of which he compared to statistical samples of the general population. (*Id.* at 7–12) (indicating several scores in the bottom 1% or 2% of the sample). The results of these tests tend to show causation.[2] The tests are well-documented in Dr. Joyce's report and can be tested and challenged by Defendant on cross-examination or rebuttal.

---

[2] The Court does not comment on whether this evidence is sufficient to prove causation at trial, only that the evidence is admissible as relevant and reliable under Rule 702.

Accordingly, the Court finds that Dr. Joyce's opinions meet the standards of Rule 702. Defendant's Motion to Exclude Testimony of Dr. Joyce (Dkt. No. 61) is **DENIED**.

### C. Motion to Exclude Brain Injury Opinions of Dr. Altman (Dkt. 64)

Defendant's Motion to Strike Dr. Altman's opinions urges the same arguments as Defendant's Motion to Exclude Dr. Joyce. In particular, Defendant argues: (1) Dr. Altman's opinions contradict those of medical professionals who treated C.H. after the accident; (2) Dr. Altman did not review depositions of C.H.'s family; (3) Dr. Altman's opinions in this case contradict the opinions he expressed in his *Wal-Mart* deposition; (4) Dr. Altman misapplies the GCS test. (Dkt. No. 64).

For the same reasons set forth *supra*, the Court in its role as gatekeeper finds that these issues go to the weight of Dr. Altman's testimony rather than its admissibility. Defendant's Motion to Exclude Brain Injury Opinions of Dr. Altman (Dkt. No. 64) is **DENIED**.

### D. Motion to Exclude Dr. Mackenzie, Dr. Scott, and Dr. Isom (Dkt. 65)

Defendant moves to exclude the damages opinions of Dr. Mackenzie, Dr. Scott, and Dr. Isom pertaining to C.H.'s alleged brain injury. (Dkt. No. 65). This Motion is entirely premised on Defendant's Motions to Exclude Dr. Arthur Joyce and Dr. David J. Altman and raises no additional arguments.

Because the Court has denied those Motions, Defendant's Motion to Exclude Dr. Mackenzie, Dr. Scott, and Dr. Isom (Dkt. No. 65) is also **DENIED**.

## III. CONCLUSION

For the foregoing reasons, Defendant's Motion to Strike Supplemental Report of Dr. David J. Altman (Dkt. No. 44) is **DENIED**. Defendant's Motion to Exclude Testimony of Dr. Arthur Joyce (Dkt. No. 61) is **DENIED**. Defendant's Motion to Exclude Brain Injury Opinions of Dr.

David J. Altman (Dkt. No. 64) is **DENIED**. Defendant's Motion to Exclude Brain Injury Related Opinions of Dr. Amy Mackenzie, Dr. Ralph Scott and Dr. Rodney Isom (Dkt. No. 65) is **DENIED**.

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE